# ROBERT MICKLE, Adm'r *c. t. a.* of B. U. CAMPBELL, *vs.* TRUEMAN CROSS, Adm'r *d. b. n., c. t. a.* of SAMUEL NEILSON.

A legacy of $4000 was bequeathed to a legatee, in trust and confidence to be distributed in such amounts and to such persons as a friend of the testator should direct. The executor having several times tendered payment of this legacy to the legatee, who declined to receive it, but would not renounce it or put in writing his refusal to accept, *retained* stocks and cash to pay the same as soon as the legatee should be prepared to receive it, which retention *appeared* in his several accounts which were *passed by the orphans court.* HELD:

That under these circumstances the *legatee* could not claim *interest* on the *money* so retained by the executor, and as there is no sufficient proof that the executor *used* the money so as to make interest, and being in no *default* for not paying the legacy, neither he nor his estate is responsible for such *interest.*

An executor or administrator can be charged with *interest* only when it appears that he is guilty of a culpable inattention to his duty, by keeping money in his possession when there is no *apparent reason or necessity* for so doing, or when he has made use of the money to his own profit and advantage.

Mickle, Adm'r of Campbell, *vs.* Cross, Adm'r of Neilson.

Where a case against an administrator is tried in the orphans court upon petition, answer and exhibits referred to both in the petition and answer and admitted as true, the statements of the *answer* must be regarded as true, unless in conflict with what is found in the exhibits.

Notwithstanding the act of 1852, ch. 133, when a cause is heard on *bill, answer* and *exhibits*, the answer is admitted to be true, although it may not have been called for under oath nor read at the hearing as evidence by the complainant.

APPEAL from the Orphans Court for Baltimore city.

The will of Samuel Neilson, executed on the 19th of February 1840, contained the following legacy: "I devise and bequeath to the honorable John Purviance, his executors and administrators, the sum of $4000, in trust and special confidence, however, to be distributed and paid in such amounts, and to such persons, as my friend, Richard Lemmon, shall direct and name, in accordance with the instructions given by me to him, and who will explain the reasons for my making this bequest."

The only question in this case is, whether the estate of Campbell, who was executor of Neilson, and died before settling his trust, is responsible or not for *interest*, from the date of the passage of his last account as executor, to his death, upon a *sum of money* retained by him to pay the above legacy as soon as the legatee should be prepared to receive it? This interest is claimed by the appellee, as administrator *d. b. n., c. t. a.* of Neilson, from the appellant, as administrator *c. t. a.* of Campbell. The facts of the case are fully stated in the opinion of this court. This appeal is taken from an order of the court below allowing the claim.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*T. Parkin Scott* and *Henry Webster* for the appellant, argued:

1st. That the case having been submitted on petition, answer and exhibits, all that is alleged in the answer must be taken as true; and if not all, then so much of the answer as is responsive to the petition. 2 *G. & J.,* 215, *Pennington*

vs. *Gittings.* 3 *Do.*, 406, *Cowman vs. Hall.* *Ibid.*, 433, *Roberts vs. Salisbury.* 7 *Md. Rep.*, 563, *Feigley vs. Feigley.*

2nd. That the estate of Campbell is not responsible for interest on the cash balance of $2631.03, retained by him as executor to pay the legacy to Judge Purviance, as stated in his fourth administration account. What was the executor to do with this legacy? It was a legacy payable *in presenti*, at any time the legatee might choose to call for it. He *tendered* its payment to the legatee, who declined to receive it, but at the same time refused to *renounce* it. It was not his duty to apply to the court, under the act of 1798, ch. 101, sub-ch. 10, sec. 11, for an order directing its investment; for the court had no power to pass such an order under that act, except where money "is directed to be paid at a *distant period* or upon a *contingency*," which was not the case here. It is true the court had the *discretionary power*, under the act of 1831, ch. 315, secs. 4 and 5, to order the money to be brought *into court*, or *invested*, but they did not *exercise* that power here. The executor, therefore, could only hold it in *readiness* to be paid over at any time the legatee might call for it. This was done, and the fact reported in the several accounts of the executor to the orphans court, who approved and sanctioned it by the passage of those accounts. The executor held this money as a *stake-holder*, liable to pay it at any time on demand. He tendered its payment to the legatee, and was always ready and willing to pay it. Under these circumstances *the legatee could not have demanded interest;* why then should the executor be made *to pay interest?* The duty to keep it ready for payment at any time to the legatee is a *good reason* why no *investment* should be made. There is no proof that he *actually made* interest on the money. He retained the fund with the assent of the legatee and the approbation of the orphans court. The 'principle of law is well settled, that an executor is in no case chargeable with interest, unless it *appears* he has used the money to his own profit, or has been guilty of *culpable neglect* or *inattention to duty.* 11 *G. & J.*, 207, *Chase vs. Lockerman.* 3 *Do.*, 24, *Wilson vs. Wilson.* 9 *Pick.*, 386, *Dodge vs. Perkins.* 2 *Dallas*, 182, *Knight vs.*

Mickle, Adm'r of Campbell, *vs.* Cross, Adm'r of Neilson.

*Reese.* 11 *Mass.*, 506, *Wood vs. Robbins.* 13 *Do.*, 233, *Wyman vs. Hubbard.* 8 *Taunt.*, 45, *Lee vs. Munn.* 5 *Monroe*, 578, *Kellar vs. Beelor.* 2 *Kent's Comm.*, 365.

*Neilson Poe* for the appellee, argued:

That the estate of Campbell is rightfully chargeable with interest on the cash balance in his hands, in the same manner in which he had been charged with interest in the settlement of his third account, and that there is nothing in the answer to the petition of the appellee which, if taken as true, exempts him from such liability. An executor is bound by our testamentary law to settle an account *every six months.* The first two accounts of Campbell were settled in 1841. His *third account* was stated on the 28th of October 1846, was *passed* by the orphans court, and is, therefore, an adjudication of that court *final,* unless appealed from in due time. In this account he *charges himself with interest* on the cash balance of $1626.14, previously retained by him to meet this legacy, from the date of his *second account,* a period of *five years;* the residue of the sum retained to pay this legacy being *stocks,* which were *interest-bearing investments* made by the testator himself. Why did he thus charge himself with interest? It was because he knew he was bound to invest, and not investing that he was bound *for the interest.* By this account he has *admitted* the receipt of interest or his liability for it, and where a party once *admits interest* it must be continued to be charged against him. The *onus* is upon the executor to show that he has derived no profits from the trust fund in his hands. That the executor is liable for this claim, is, we think, fully settled by the authorities. 9 *G. & J.*, 115, *Thomas vs. Frederick Co. School.* 4 *Do.*, 461, *Gwynn vs. Dorsey.* 3 *Do.*, 311, *Diffenderffer vs. Winder.* 10 *Do.*, 186, *Comegys vs. The State.* 11 *Do.*, 208, *Chase vs. Lockerman.* 9 *Gill*, 200, *Worthington's Exc'rs vs. Owings.* *Acts of* 1798, *ch.* 101, *sub-ch.* 10, and 1831, *ch.* 315. 1 *Johns. Ch. Rep.*, 508, *Dunscomb vs. Dunscomb.* *Ibid.*, 527, *Manning vs. Manning.* 4 *Do.*, 303, *Brown vs. Rickets.* 2 *Wend.*, 77,

*De Peyster vs. Clarkson.* 1 *Edw. Ch. Rep.*, 131, *Garniss vs. Gardiner.* 2 *Barb. Ch. Rep.*, 213, *Spear vs. Trickham.* 13 *Mass.*, 233, *Wyman vs. Hubbard.* 3 *Leigh*, 359, *Burwell vs. Anderson.* 1 *Grattan*, 292, *Bourne vs. Mechan.* 2 *Dev. Eq. Rep.*, 142, *Finch vs. Ragland.* 2 *Dev. & Bat. Eq. Rep.*, 325, *Peyton vs. Smith.* 2 *McCord's Ch. Rep.*, 1, *Black vs. Blakely.* 1 *Dessaus*, 193, *note.* 3 *Do.*, 241, *Darrel vs. Eden.* 1 *McMullan Ch. Rep.*, 275, *McAlister vs. Brice.* 3 *Munroe*, 122, *Campbell vs. Williams.* 6 *B. Munroe*, 356, *Bowling vs. Cobb.* 7 *Yerger*, 214, *Turney vs. Williams.* 14 *Illinois Rep.*, 1, *Rowan vs. Kirkpatrick.* 10 *Barr.*, 408, *Brinton's Estate.* 1 *Brown's Ch. Rep.*, 359, *Newton vs. Bennet.* 3 *Do.*, 433, *Franklin vs. Frith.* 10 *Eng. Law & Eq. Rep.*, 233, *Williams vs. Powell.* 2 *Wms. Exc'rs*, 15, 68.

ECCLESTON, J., delivered the opinion of this court.

Under the agreement, made part of this record, the only subject for our consideration is, whether the appellee as administrator *de bonis non* of Samuel Neilson, can claim of the appellant as administrator of B. U. Campbell, who was executor of the said Samuel Neilson, interest from the 19th of December 1846, to the decease of said Campbell, in April 1855, upon the cash balance of $2631, reserved or retained by him, as appears by his fourth account, "to enable the accountant to pay to the honorable John Purviance, so soon as he should be prepared to receive it, a legacy of four thousand dollars, bequeathed to him in trust and special confidence by the testator."

Whether the estate of Campbell in the hands of the appellant, is responsible for the interest now claimed, we think must very much depend upon what would be the appropriate answer to an inquiry, whether, under the circumstances disclosed in the record, Judge Purviance was excluded from the right of demanding interest upon his legacy.

The petition states that, in June 1840, Samuel Neilson departed this life, having first made his last will and testament in due form of law, whereby he appointed Bernard U. Camp-

bell his executor; that the will was duly admitted to probate, and letters testamentary were granted to the said Campbell; who settled in the same court in which this petition was filed, four accounts as said executor; the first on the 2nd of October 1841, the second on the 9th of November 1841, the third on the 28th of October 1846, and the fourth on the 19th of December 1846; that Campbell died in April 1855, leaving a will appointing his wife executrix, who renounced; and Robert Mickle was duly appointed his administrator with the will annexed; that the petitioner was appointed and qualified as administrator *de bonis non* of Neilson; and that Campbell died without having made a final settlement as said executor, leaving a large balance of the estate in his hands.

The petition refers to the will of Neilson, and says, "that amongst other bequests, the said Samuel Neilson did bequeath to the honorable John Purviance, his executors and administrators, the sum of four thousand dollars in trust, and special confidence however to be distributed and paid in such amounts, and to such persons as Richard Lemmon should direct and name, in accordance with the instructions given to him, and who would explain the reasons for making the bequest." It is also alleged by the petitioner, that he is "informed and believes, that as soon as this bequest was called to the attention of the said John Purviance, he unconditionally renounced and refused the same, and that the said Richard Lemmon, always refused to give any directions for the payment and distribution of the said legacy, and that both the said Lemmon and the said Purviance, have departed this life without leaving any directions in reference to said legacy." The petition then states, "that by the second account of said B. U. Campbell as executor of said Neilson, he retained to meet said legacy, when the said Purviance should be ready to receive the same, certain stocks of the appraised value of $3608.50, and the sum of $1626.14 in cash. By the third account, settled on the 28th of October 1846, he retained the same stocks and $2754.43 in cash, to meet said legacy, charging himself with interest on the cash balance of $1626.14, previously retained, from the date of the second to the date of the third account, being five

years, and by his fourth account settled on the 19th of December 1840, he retained the same stocks, and $2631.03 in cash, to meet the said legacy."

The petitionor charges, "that the said Bernard U. Campbell, during his life time neither invested the said cash balance, nor as your petitioner believes, kept the same as executor, in any bank or place of deposit separate and apart from his own funds; but that he mingled the same with his own moneys, and as this petitioner believes used the same as if it were his own." And the prayer of the petition asks, that the present appellee may be required "to answer all the matters and things set forth in this petition, and particularly to disclose when and in what manner the said John Purviance renounced the said legacy, whether in writing or otherwise, whether the books and papers of said Campbell, show that he kept the said cash balance separate and apart from his own moneys or otherwise." And the prayer further asks, that the said Mickle may be required "to settle a final account of the estate of the said Neilson, from the books and papers of said Campbell." In the previous part of the petition, the petitioner had claimed the right "to call upon Mickle, from the books and papers in his possession, to settle the account of said Campbell as executor of said Neilson, and to hand over to him (the petitioner) the balance found to be due, if the estate of the said Campbell be sufficient to pay the same."

The petition and the answer are under oath.

The answer admits the statements contained in the petition in regard to the decease of Neilson, his having left a will appointing Campbell his executor, to whom letters testamentary were regularly granted. That Campbell died, leaving a will naming his wife as executrix, who renounced, and letters of administration with the will annexed were granted to the respondent; that, upon the decease of Campbell, letters of administration *de bonis non* on the estate of Neilson were granted to the petitioner. And the answer says, "This respondent admits, that the said Campbell stated and passed four accounts as executor as aforesaid, which are now of record in this court." It is also said in the answer, "this respondent admits that the

said Bernard U. Campbell departed this life without having fully settled and closed up his said trust, as executor of the will of said Neilson; and this respondent, from the books and papers of said Campbell, hath stated the account herewith filed marked B. U. C., which he prays may be taken and considered as a part of this his answer. And this respondent admits, that the said Campbell did retain in his hands stocks and money to a considerable amount, as will appear by the accounts already passed in this court, and that herewith filed, to pay the legacy of four thousand dollars to the late Judge Purviance as mentioned in said Neilson's will, and for greater certainty concerning said legacy, this respondent begs leave to refer to said will. And this respondent further answering says, that he is informed and believes that the said Campbell, in his lifetime and on several occasions offered to pay said legacy to the said Judge John Purviance, but that the said Purviance declined then to receive it, but would not renounce it, and would not put in writing any thing to indicate his refusal to accept or renounce or release said legacy."

The answer admits the decease of Judge Purviance and Richard Lemmon.

The respondent says, "that he does not find from the books of said Campbell, that he either invested the said cash balance or kept the same as executor in any bank or place of deposit, separate and apart from his own funds, or what he did with it, and he has no personal knowledge on the subject; but this respondent avers that the said Campbell, was at all times ready and willing to pay said moneys to whomsoever might be entitled thereto." And the respondent "denies that said Campbell, was in default in relation to said legacy."

The answer also says, the respondent "has offered to pay and deliver over to said Cross, the stocks and moneys in his hands, belonging to said Neilson's estate as shown by the account herewith filed, but said Cross hath refused to accept the same."

The petition was filed on the 10th of June 1856, and the answer came in the same day. The account on the estate of Neilson, mentioned in the answer, as having been *stated* by

the respondent, it seems was *passed* by the orphan's court the day it was filed with the answer.

The record states that the petitioner, by his attorney, "exhibits and files in court here, a copy of the last will and testament of Samuel Neilson deceased." And after giving the copy, the record then says that the petitioner, by his attorney, "exhibits and files in court here, copies of Samuel Neilson's 1st, 2nd, 3rd and 4th administration accounts, which said copies are in the words and figures following," &c.

This will and these accounts, it will be recollected, are mentioned in the petition and referred to therein; and instead of being disputed, contradicted, or denied, in any respect by the respondent, his answer admits them, and refers to them as matters of record in the court in which the cause was pending. There is no proof of any kind *dehors* those instruments, and when considering what should be the effect of an answer in such a case, we think the same rule should prevail which is applicable when a cause is heard upon bill, answer and exhibits, in a court of equity. This being so, the present answer must be held as true in regard to what is stated therein, unless in conflict with what is to be found in the instruments referred to by it, and admitted as true.

Although this is the answer of an administrator, the principle applied to it is not in conflict with the decision in *Pennington, Adm'r of Patterson, vs. Gittings' Exc'r, 2 Gill & Johnson*, 215. There the cause was not heard on bill, answer and exhibits, but a replication had been filed and proof taken.

The case of *Warren vs. Twilley, Ante,* 39, shows, that notwithstanding the act of 1852, ch. 133, when a cause is heard on bill, answer and exhibits, the answer is admitted to be true, although it may not have been called for under oath, nor read at the hearing, as evidence, by the complainant.

There is nothing in this case, showing any deficiency of Neilson's estate to pay debts and legacies. Nor is it denied that when the debts were paid, Judge Purviance had a right to receive his legacy of $4000, provided he had not renounced it. If therefore the principal sum alone, had been actually

paid to the legatee, the representatives of the estate of Neilson, would have had no cause of complaint. But it is shown by the answer, that instead of an actual payment, the legacy was tendered on several occasions, and Judge Purviance declined to receive it; neither would he renounce it, nor put in writing any thing to indicate his refusal to accept, or renounce, or release the same. The executor therefore retained stocks and cash to enable him to pay the legacy, "so soon as the legatee should be prepared to receive it." And this retention appears in the administration accounts passed by the orphans court. With regard to retaining money by an administrator, under the direction of the orphans court, see 4 *G. & J.*, 462.

The cash retained did not amount to $4000, and although the cash and stocks together exceeded that sum, it is shown that all the dividends upon the stocks have been fully accounted for, so that the claim at present is based alone upon the loss of interest on the cash. Now, if such a claim would be without foundation, provided an actual payment had been made to the legatee, why should not retaining the money for the purpose of paying him have a similar effect, if the sum retained did not exceed the principal of the legacy? The estate of the testator would be reduced no more in one event than in the other.

Judge Purviance having on several occasions refused to accept payment when offered, and there being no evidence of his having made a subsequent demand, or of having indicated his readiness to receive the money, he could have no claim for interest; especially when the answer avers *a readiness and willingness at* all times, on the part of the executor, to pay. And by retaining the money to pay the legacy in such a case, Campbell's estate is not responsible for the claim now insisted upon. The proof is not sufficient to show that the money, retained in his hands, was so used by him as to produce interest during the time for which it is claimed. He was in no default for not paying the legacy; and having on several occasions offered payment, and being at all times ready and willing to pay whenever the party entitled to the money should be prepared to receive it, his conduct protected the estate of

Neilson from any legitimate demand for interest upon the legacy. There is, therefore, no propriety in charging such an executor with interest, upon the presumption, that he made it merely because the money was in his hands; when it is shown that, with the approbation of the orphans court, he held the money for the purpose of paying a claim actually due, and which might be demanded at any time; thereby creating a necessity for him to be always ready and willing to pay, which he was, as alleged in the answer.

In *Gwynn vs. Dorsey, Adm'r of Howard*, 4 *G. & J.*, 460, it is said: "Whenever an administrator manifestly intends fairly to do his duty, the rule should be not to hold him liable upon slight grounds." This principle is adopted in *Chase vs. Lockerman*, 11 *G. & J.*, 207, where the court were considering how far executors were responsible for interest upon money in their hands. And in the latter case the former is referred to, as holding that, an administrator may be compelled to pay interest upon money kept in his hands without apparent reason, from the end of thirteen months after the date of his letters, but as likewise holding, at the same time, that he is only to be charged with interest, where in so doing, it also appears that he is guilty of a culpable inattention to his duty. And in *Chase vs. Lockerman*, the court quote, *Wms. on Ex'crs*, 1132, as saying: "There are two grounds on which an executor or administrator may be charged with interest: 1st. That he has been guilty of negligence in omitting to lay out the money for the benefit of the estate. 2nd. That he himself has made use of the money to his own profit and advantage, or has committed some other misfeasance. With respect to neglect on the part of the executors, in not laying out balances, it must be observed, that it frequently may be necessary and justifiable, for an executor to keep large sums in his hands, to answer the exigency of the testator's affairs, especially in the course of the first year after the decease of the testator, in which case such necessity is so fully acknowledged, that according to the ordinary course of the court, the fund is not considered distributable until after that time. But if the court observes that an executor keeps money dead in his hands;

without any apparent reason or necessity, then it becomes negligence, and a breach of trust, and the court will charge the executor with interest."

From these authorities it will be seen, that an executor may be responsible for interest on money kept in his possession, although producing no interest, when there is no *apparent reason or necessity* for his doing so. And this being true, we conceive it to be equally true, that where there is an *apparent reason or necessity* for retaining the money, the executor is not liable for interest, unless it can be shown that he has received interest, or has made use of the money for his own profit or advantage.

We think there was reason for the retention by Campbell; and that the circumstances do not justify holding his estate responsible for the interest now claimed.

On the 11th of July 1856, the orphans court passed the decree from which this appeal is taken. In that decree the present appellant is required to settle a further account upon the estate of Campbell, and in stating such account the register is directed to charge that estate with interest, on the sum of $2631, from the 19th of December 1846 to April 1855, the period of Campbell's death. We consider the charge of interest erroneous, and therefore the decree will be reversed, but the cause will not be remanded, as the agreement renders it unnecessary.

Each estate must pay its own costs.

*Decree reversed.*

LE GRAND, C. J., delivered a separate concurring opinion.

This case, in my opinion, is free from all difficulty. All the interest and dividends received by Campbell have been accounted for. He *"repeatedly"* offered to pay the legacy to Judge Purviance, who, as often, declined to receive, but still, without renouncing, the legacy. He occupied the attitude of, at any moment, being ready to ask for the payment of the legacy. His refusal to receive when offered to him, could not make Campbell his trustee, so as to devolve upon him the obligation to make an investment for the benefit of Judge Pur-

viance. Had the latter brought suit for the amount, with interest, he could not have recovered interest, and, for the reason, that he had declined to receive the amount when tendered. If he could not recover, how can the administrator *d. b. n.* of Neilson, recover for the benefit of the representatives of Judge Purviance? To allow of such a state of things, would be but to say, that what could not be done by Judge Purviance or his representatives, may be done indirectly by the appellee. I am of the opinion, neither Judge Purviance nor his representatives have any claim for interest, and as a consequence, the administrator *d. b. n.* of Neilson, cannot recover it for them. For these reasons, I concur in the reversal of the decree of the orphans court,