(Decided 27th March, 1889.)

---

MARGARET W. DORSEY *vs.* ANDREW BANKS, Trustee.

*Trustee and Cestui que trust—Contract with Cestui que trust—Interest on Trust funds used by Trustee.*

A testamentary trustee, who was required by a decree of a Court of equity, who, at his instance, had assumed supervision of the trust, to pay to the *cestui que trust* semi-annually, one-half of the net income of certain estate, during her life, will not be relieved from the obligation of paying interest on income withheld by him, and applied to his own use, on the ground that the *cestui que trust* entered into an agreement or contract with him to the effect that if he would thereafter pay her the income, from time to time, as she needed it, or as it was received by him, and at such times make a partial payment on account of the income in arrear, she would be satisfied, and charge him no interest, the evidence in respect of such contract being conflicting, and the only consideration therefor being that she was to receive in the future her income as it accrued, or when she wanted it, instead of semi-annually as required by the decree, and he having also failed to comply with the condition coupled with the consideration that on each occasion when payments were made by him on account of accruing income, he should make a partial payment on account of the arrearages of income.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. The order of the Court below, from which the appeal was taken, was passed by Judge DENNIS.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, and BRYAN, J.

*George Whitelock,* and *Samuel D. Schmucker,* for the appellant.

*R. S. Culbreth,* for the appellee.

MILLER, J., delivered the opinion of the Court.

A single question is presented by this appeal, and the following brief statement of facts, derived from the record, is sufficient to show how it arises:

Daniel B. Banks, by his will, devised the residue of his estate to his son, Andrew Banks, the appellee, *in trust* to collect the rents, issues and profits thereof, and to distribute one-half of the net income "at regular stated periods during each year" to his daughter Mrs. Dorsey, the appellant, during her natural life, and the other half in like manner, to his daughter Annie, now Mrs. Godwin, during her natural life. Upon the death of each of these daughters he devised one-half of the *corpus* of this residue to her issue *per stirpes,* if she had any living at the time of her death. The will also gave the trustee power "to make such sales, leases, or other disposition of the trust estate, and such reinvestment of the proceeds, as in his judgment shall be expedient for the better and more profitable development thereof." At the instance of the trustee a Court of equity assumed the supervision of this trust, and by a decree passed in June, 1877, he was directed to render regular semi-annual accounts of his receipts and disbursements. Some time after the passage of this decree, and prior to the year 1880, the appellee, in connection with another party, undertook the building of a row of eleven marble-front houses on Oak street, and three brick houses on Mankin street. This transac-

tion resulted in a heavy loss, and he used a considerable amount, both of the principal and income of the trust, to meet the obligations he had thus incurred. It is conceded he had obtained no authority from the Court to use the trust funds in this way, or to undertake this enterprise for the benefit, or at the risk, of the trust estate. He has, however, replaced all of the principal he thus expended, with interest thereon, and has also repaid to the appellant all arrearages of her income, but has failed to pay her interest on such income during the time he thus withheld and used it. This interest she now claims from him, and the question is whether she is entitled to recover it.

The trust, as to the appellant, continues during her life. Her share of the net income for life was all that was given to her by her father's will, for her support and that of her family. The trustee was bound under the decree of June, 1877, to pay it over to her semi-annually, but this he failed to do. Prior and up to the 1st of January, 1881, he was in arrear to the amount of $4848.97, and from that time on this amount varied, increasing in some years, and decreasing in others. Thus on the 1st of January, 1882, it was $5914.86; 1883, $6914.40; 1884, $5952.44; 1885, $3508.87; 1886, $3527.05; 1887, $1952.36; 1888, $4191.35; and was not extinguished until March, 1888. It is admitted that the trustee applied this income to *his own uses* whilst it thus remained in his hands. That a trustee who thus uses trust funds is chargeable with interest thereon is a proposition too well settled to admit of doubt. *Diffenderffer vs. Winder*, 3 *G. & J.*, 342; *Comegys vs. State, use of Dyckes*, 10 *G. & J.*, 186; *Mickle, Adm'r vs. Cross, Adm'r*, 10 *Md.*, 362; *Lewin on Trusts*, 340; 1 *Perry on Trusts, sec.* 464.

Now, what is the defence which the trustee sets up against this claim? It is, substantially, that the appel-

lant, his sister, was aware of his losses in the Oak street building enterprise, which he says he undertook in the interest and for the benefit of the trust estate, as well as his own, knew he had applied her money to meet obligations thereby incurred, sympathized with him in his misfortune; that he was abundantly able to repay her out of his own means, and that in the year 1880 she entered into an agreement, understanding, or contract, with him to the effect that if he would thereafter pay her the income, from time to time, as she needed it, or as it was received by him, and at such times make a partial payment on account of the income in arrear, she would be satisfied, and charge him no interest. In determining the validity of this defence it must be remembered that we are dealing with a controversy between trustee and *cestui que trust*, in which it is conceded that the former has applied the trust funds to his own use. In such case the plain and only duty of the Court is simply to determine the question whether there has been any binding contract, agreement, or understanding entered into between these parties by which the *cestui que trust* is debarred or estopped from claiming this interest. And here it must be borne in mind that every contract between trustee and *cestui que trust* by which the former obtains any pecuniary benefit or advantage is open to suspicion, and the *onus* is on him to establish to the full satisfaction of the Court that it was the free, voluntary, and unbiased act of the latter, and that the transaction was fairly conducted, as if between strangers. The least that can be said is that the agreement must be definite in its terms, established by clear and satisfactory proof, and founded on a valid consideration.

The alleged agreement was made, if made at all, in the latter part of the year 1880, at the office of the trustee, and is set out in rather vague terms in the

answer of the trustee to the petition of the appellant. The testimony as to its having been made is conflicting. Mrs. Dorsey testifies about it thus: "I asked him" (her brother) "several times if he wouldn't pay me at stated times *my income,* as father had requested in the will; he told me he couldn't very well do that; but that if I would draw it as I wanted it; and then I asked him if he would pay me interest on the balance, and he told me he would; of course, he didn't offer to pay me interest on the balance until I asked him." Mr. Banks, the trustee, says his sister is mistaken and that "the agreement with reference to the payment of the income was that if I paid her such amounts from time to time as she called for, *and reduced the indebtedness,* that she would be satisfied; this conversation ensued, or rather this understanding was had, after I had expressed to her my embarrassment in connection with the Oak street property; I, however, agreed to pay her interest on the principal." Being again asked, did you or not agree to pay her interest on income? he replied: "No I did not; but, on the contrary, she expressed herself as not desiring that I should, *provided I reduced the amount of the indebtedness,* and paid her from time to time what she required—what she called for—remarking that she depended upon that to meet her requirements." Mr. Culbreth, who was present at the interview, says: "I may not remember distinctly all that transpired, but I do remember distinctly the fact that there was an understanding or agreement between Mrs. Dorsey and Mr. Banks by which Mr. Banks was to pay her the current income as it matured, *and at such times to make her a partial payment on account of the income due her which was in arrear;* Mrs. Dorsey said this mode of payment would be satisfactory to her provided the income was paid when she called for it, without interest on the income so in arrear, because

she relied upon her income from the estate for her support, and she did not invest it.''.

Taking this testimony as a whole, we think it very doubtful, to say the least, whether it comes up to the standard of clearness universally required, to prove an agreement between a *cestui que trust* and trustee, under which the latter derives a pecuniary benefit. But assuming the testimony of Mr. Banks and Mr. Culbreth to outweigh in probative force that of Mrs. Dorsey, still the question recurs, what consideration was there for this agreement? The only conceivable one is that, under it, she was to receive in the future her income as it accrued, or when she wanted it, instead of semi-annually as the decree of 1877 had provided. This may have been of some slight convenience to her, but we must observe that it is a very slender thread upon which to hang the consideration for an agreement, whereby a *cestui que trust* gives up a valuable and undoubtedly valid claim against a delinquent trustee. But again, assuming this consideration to be legally sufficient, it was coupled with the condition that on each occasion when payments were thus made by the trustee on account of accruing income, he should make a partial payment on account of the arrearages of income, so that his indebtedness on this account would be reduced. This is explicitly stated as being an essential part of the arrangement, both in the answer of the trustee, in his testimony, and in that of Mr. Culbreth. In order, therefore, for the trustee to avail himself of this agreement it was incumbent upon him to have scrupulously observed this important condition, for if he failed in this his sister was no longer bound by it. That he did so fail has already been shown. So far from immediately reducing the indebtedness on account of arrears which had accrued prior to 1880, the date of the alleged agreement, he continued for several

years thereafter to increase that indebtedness, to a very considerable amount, and did not finally pay it off until March, 1888.    This, in our opinion, disposes of all objection to the appellant's claim.    The trust is an express and continuing one, and we find nothing in the record upon which the defence of *laches*, acquiescence or estoppel can be properly based.

We have examined the case very carefully, and while we acquit the trustee of all *intention* to wrong his sister, or injure the trust estate committed to his charge, we yet find that he has been *delinquent* in the legal sense of the term, and we cannot relieve him from the obligation to pay this interest.    To do so would be setting a very dangerous precedent; and we cannot better conclude this opinion than by repeating the language of Judge DORSEY in *Diffenderffer vs. Winder*, to the effect that holding delinquent trustees "to a strict, if not rigorous, justice, is productive of the most beneficial consequences, and is founded on the soundest principles of policy.    It is the surest, perhaps the only, means of securing the fidelity, vigilance, and integrity of those to whose hands are committed the interests of the weakest, and most unprotected portion of the community."

The result is that the order appealed from, which dismissed the appellant's petition, must be reversed, and the cause remanded, to the end that the appellee may be required to pay to the appellant *simple* interest on the arrears of her income so long as he retained them in his hands.

*Order reversed, and*
*cause remanded.*

(Decided 27th March, 1889.)