[Civil No. 4503. Filed May 17, 1943.]

[137 Pac. (2d) 390.]

In the Matter of the Estate of Robert J. Monaghan, Deceased, ELIZABETH G. MONAGHAN, Appellant, v. RICHARD H. KENNERDELL, Appellee.

Mr. H. S. McCluskey and Mr. Thomas A. Flynn, for Appellant.

Messrs. Cornick & Carr, Mr. Wallace W. Clark and Mr. Ozell M. Trask, for Appellee.

STANFORD, J.—This is a case of the contest of a will, the ground for contest being that the decedent lacked testamentary capacity to make the will.

The will was executed April 18, 1940, and testator, Robert J. Monaghan, died on or about the 10th day of May, 1941, at Phoenix, Maricopa County, Arizona. On May 17, 1941, Richard H. Kennerdell, the person named executor in the will in question, filed the will

for probate in said county. The hearing on probate proceedings was set for June 3, 1941, and on May 26, 1941, the appellant filed an opposition to probate the same, and the matter of the contest was heard before a jury, the case having been set for trial in September, 1941. On June 3rd an affidavit of bias and prejudice was filed by the executor causing the case to be transferred from the division of the court of Judge J. C. Niles to the division of the court of Judge M. T. Phelps.

The following was the interrogatory submitted to the jury at the close of the case:

"Was the deceased, Robert J. Monaghan, of sound and disposing mind on April 18, 1940, when he executed the instrument filed herein for probate as his last will and testament? (Answer yes or no)."

The jury answered in the affirmative in rendering its verdict.

The fourth paragraph of the will reads as follows:

"Fourth: I give, devise and bequeath to my wife, Elizabeth G. Monaghan, from whom I have been permanently separated for four (4) years or thereabouts, the cash sum of ten ($10.00) dollars. I represent that in June, 1936, or thereabouts my said wife and I entered into a property settlement agreement which said agreement is of record in the office of the county recorder of Yavapai County, Arizona."

That there was a settlement of personal property between the parties hereto as follows, except signatures and notary acknowledgement:

"The undersigned, R. J. Monaghan and E. G. Monaghan, his wife, have this day agreed on a complete cash and chattel settlement, satisfactory to both parties, it being understood and agreed that the only community property remaining undivided is the real property owned jointly by them.
"Dated this 20th day of June, 1936."

■ Among the many contentions of appellant is the disqualification of Judge Niles upon unstatutory grounds, and consequent lack of jurisdiction of Judge Phelps to try this matter.

Section 38–102, Arizona Code Annotated 1939, under the chapter of *"Probate Law and Procedure,"* reads in part as follows:

" . . . A change of judge shall be granted as in civil actions as to any matter and upon the motion of a party interested in the proceedings."

Section 21–107, under *"Change of judge,"* reads as follows:

" . . . or that the affiant has cause to believe and does believe that on account of the bias or prejudice or interest of said judge he can not obtain a fair and impartial trial, said judge shall at once transfer the action to some other division of the court, if there be more than one (1) division of said court in said county, or request the judge of some other superior court of some other county to preside at the hearing and trial of such action."

We find on reading the transcript of evidence in this cause that after the affidavit of bias and prejudice was filed, Judge J. C. Niles, of the Superior Court of Maricopa County, heard counsel on both sides of the case on the subject of his disqualification and then transferred the case to Judge M. T. Phelps, also of that court.

During the hearing on this subject one of the attorneys for appellee made the statement to the effect that they would be willing to try the case before any one of four judges, including Judge Phelps of Maricopa County.

One of the counsel for appellant stated:

"We suggest that we believe that the nature of the matters involved are such that it would be to the advantage of the estate that the matter be determined

by a Maricopa County judge and that by reason of the extensive detail involved it would probably be detrimental to the estate to have an outside judge handle the same."

We think that the case of the *Estate of Sears,* 54 Ariz. 52, 91 Pac. (2d) 874, 875, lays down the rule that can be followed in the matter of change of judges, and from that decision we quote the following:

"Section 3888, Id., besides giving certain grounds of disqualification of a judge, adopts the procedure for changing judges in probate, including the grounds of bias and prejudice, as prescribed in civil actions."

Section 3888, referred to above, is section 38–102 of our present code.

We hold that Judge J. C. Niles acted according to our law when he stated to the interested parties after the affidavit of bias and prejudice had been filed, "It is my interpretation of the law upon the filing of an affidavit of bias and prejudice the Court has the single duty of assigning it to another judge subject to the expression of choice by both parties."

■ The contention has been made by the appellant that Judge Phelps, on receiving the assignment of this cause from Judge Niles, made a statement which we think it is important we pass on at this time. When the case was taken from the division of Judge Niles to that of Judge Phelps, the latter said:

"Well, now, may I ask this before you go further —I never handled a probate matter, except years ago, and if I ever did know anything about it, I have forgotten it. I think I have only handled one contest."

Appellees point to the fact that Judge Phelps was a trial judge in the case of the *Estate of Sears, supra.* In that case his order was affirmed. He is a seasoned trial judge, and with the variety of work of the

Superior Court of Maricopa County, the seat of the capitol of our state, if he could recall, no doubt has had a great deal of experience. The comment could not disqualify him. Judges are somewhat dual persons when they are given a task that they would rather not have. Probably that was one way that he might be able to be delivered of it, but certainly his many years as one of the judges of the Superior Court of Maricopa County would attest that he could not, by such statement, be disqualified in this action.

 Another matter of contention is, whether or not the appellee, who is the person named in the will as the executor, is so interested in the estate that he is entitled to appear as a contestee in this will.

He holds the sacred appointment in the will of executor and as such when he is made the contestee in the contest of the will he is called on to defend.

In this regard we quote from the case of *Bell* v. *Davis*, 43 Okl. 221, 142 Pac. 1011, 1012, Ann. Cas. 1917C, 1075:

" . . . The respondent, being named as executor in the will, necessarily was aggrieved by the judgment of the county court adjudging the will invalid. He had a direct interest in having the will sustained, and the same probated."

In the case of *McArthur* v. *Scott,* 113 U.S. 340, 5 Sup. Ct. 652, 674, 28 L.Ed. 1015, we quote the following:

"Executors and trustees, appointed by the testator to perform the trusts of the will and to protect the interests of his beneficiaries, are as necessary parties to a proceeding to annul a probate, as the heirs at law are to a suit to establish the validity of a will. . . . "

It is our opinion that there is a mistaken idea about the duty of the executor appointed by will and from decisions read it appears that he must, in duty to

his trust, protect the instrument when it is assailed in court.

Appellant herein submits to us that the appellee cannot prosecute this appeal unless he had taken the oath as executor and given the bond required.

Section 38–301, Arizona Code Annotated 1939, reads as follows:

"The court admitting a will to probate shall issue letters thereon to the persons named therein as executors who are competent to discharge the trust, who must appear and qualify, unless objection is made as provided in this chapter."

The trial judge in this case, upon the rendition of the verdict by the jury, issued his judgment and order admitting the will to probate and for letters testamentary. This judgment and order was filed on September 29, 1941, and the order reads, in part, as follows:

"IT IS ORDERED, ADJUDGED AND DECREED that the said Richard H. Kennerdell be and he is hereby appointed as executor of said estate; and that letters testamentary issue to said petitioner upon his taking the oath as required by law and giving the bond required by law for the faithful execution of the duties of his trust as said executor in the sum of $20,000.00 with sufficient sureties to be approved by the judge of this court; . . ."

After the order appointing this executor the appellant herein gave her notice of appeal and also gave a supersedeas bond that stayed the action of the executor. We feel, however, that he, in duty to his trust, must defend in this appeal case.

There are some forty-five assignments of error in this case and we think it unnecessary to treat with all of them.

We must not lose sight of the issue involved. It is expressed clearly in 28 R.C.L. 377 and the cases cited. We quote:

"*Matters Not Concluded.* The functions of a probate court when a will is propounded for probate are limited to inquiring and determining whether or not the instrument presented to it as the last will of the decedent was executed by him in the manner prescribed by statute, and when he was legally competent to execute it, and free from duress, menace, fraud and undue influence. Questions as to the property rights of devisees, legatees, heirs, and others which might arise out of a construction of the terms of a will are not to be determined in a proceeding for the probate of a will, and therefore the mere probating of a will is not final and conclusive as to the construction of the instrument. The validity of particular testamentary gifts contained in the will are not involved in the proceedings, and the orphans' court in admitting to probate the will of a married woman, disposing of her separate property, does not decide upon the right of disposal, but merely the factum of the instrument. Nor is the question of ownership by the testator of property claimed to belong to his estate involved in or determined by the probate of his will. Since the admission of a will to probate decides nothing but its due execution and publication the rights of one claiming a share of the estate on the ground that he is not mentioned in the will are not concluded by such decree."

The jury in this case did not come to the conclusion that the testator had the mental capacity to make his will, and from the review of the case, including the reading of the evidence, it appears to us that the testator clearly had the capacity to make his will; he understood the business in which he was engaged; and appreciated the effect of the disposition of his property.

We accordingly affirm the judgment herein.

McALISTER, C. J., concurs.

ROSS, J., concurs in the result.