[Civil No. 2826. Filed March 3, 1930.]

[285 Pac. 266.]

In the Matter of the Estate of ADELAIDA ORRANTIA, Deceased. DARIO ORRANTIA and ARCELIA ORRANTIA VIUDA DE VERA, Appellants, v. THE FIRST NATIONAL BANK OF NOGALES, as Administrator With the Will Annexed of the Estate of ADELAIDA ORRANTIA, Deceased, Appellee.

Mr. G. A. Little, for Appellants.

Messrs. Hardy & Hardy, for Appellee.

McALISTER, J.— This is an appeal from an order approving the first and final account of the First National Bank of Nogales, Arizona, as ancillary administrator of the estate of one Adelaida Orrantia, who died September 26th, 1927, at El Fuerte, Sinaloa, Mexico, where she had resided for many years.

It appears that on October 5th after her death an instrument purporting to be her last will and testament was admitted to probate in the court of first instance of the district of El Fuerte, state of Sinaloa, Republic of Mexico, a court of competent jurisdiction into which the estate of decedent and the parties interested therein were properly brought, and that Ezequiel Orozco was appointed executor as provided therein; that the six devisees under the will were all residents of El Fuerte, Sinaloa, over twenty-one years of age; that among the assets of the estate devised was cash on deposit in the First National Bank of Nogales, Arizona, in excess of $10,000, and that on November 5th, 1927, this bank filed in the superior court of Santa Cruz county, Arizona, a petition praying that the will be admitted to probate in that court and that letters of administration with the will annexed be issued to it and setting up in addition to the foregoing that a duly authenticated copy of the will and of the proceedings in probate were attached to its petition and that Ezequiel Orozco refused to act as executor in this ancillary proceeding and requested the court to appoint the petitioner in his stead.

The hearing on this petition was set for November 17th, 1927, and on that day Dario Orrantia filed an objection to the appointment of the First National Bank, or any other person, as administrator with the will annexed, and as grounds therefor alleged these facts: That Adelaida Orrantia left no heirs either ascending or descending, brothers or sisters; that he was her nephew and would, with his brothers and sisters, be entitled to the estate in case the will presented for probate should be declared invalid; that probate proceedings had been commenced and the purported will, dated September 19th, 1927, had been approved and admitted to probate in the court of first instance in the district of El Fuerte, Sinaloa,

Mexico, but that said will was invalid under the laws of the state of Sinaloa and that he had filed a petition asking that it be so declared. Upon this showing he prayed first for a denial of the bank's petition; second, for a postponement of the hearing set for that day to give him time to obtain authenticated copies of the proceedings contesting the will, and, third, for a refusal, upon their production, to probate the will in Arizona until the contest had been decided.

These objections were overruled, the will approved and admitted to probate, the bank appointed administrator with the will annexed and letters of administration ordered issued upon its giving a bond in the sum of $174,000, all on November 17th.

Authenticated copies of the contest proceedings pending in said court of first instance, together with an English translation thereof, were filed on December 10th by stipulation of the parties and on December 24th thereafter the motion of Dario Orrantia to vacate and set aside the orders admitting the will to probate and appointing the bank administrator was granted upon the ground that they were prematurely made, letters of administration were revoked, the bank directed to file its final account as administrator within ten days, and the hearing on its petition for the probate of the will and the issuance to it of letters of administration continued until February 1, 1928. In compliance with this order the bank filed on January 6th, 1928, its final account as administrator which disclosed that the estate in Arizona inventoried $86,724.12 and that it had paid out the following items for which it asked to be credited: $10 for publication of notice to creditors, $15 for publishing notice of probate of will, $10 for filing fee, and $458 for premium on bond as administrator.

Dario Orrantia and his sister, Arcelia Orrantia Viuda de Vera, filed the following objections to these four items: The amounts spent for premium on bond

and for publishing notice to creditors, upon the ground that they were incurred pursuant to the order appointing the bank administrator, an action which the court had no jurisdiction to take; the amounts paid for publishing notice of the probate of the will and for filing the petition for probate, upon the ground that they were not proper · charges against the estate unless and until it is determined the decedent died testate.

This further objection was made: That the assets of the estate in this jurisdiction during the lifetime of the decedent and for many years prior to her death consisted of cash on deposit with the First National Bank of Nogales, Arizona, which drew interest at the rate of four per cent per annum, compounded semi-annually, and that the account filed by the bank failed to include interest on this deposit for the full six months' interest period beginning July 1st, 1927, or to disclose that the bank had given notice of an intention to terminate the account or change the conditions or terms of the contract of deposit as it existed prior to decedent's death; that consequently the bank is properly chargeable with interest at the rate of four per cent per annum for this full six months' period and the account of administrator is incorrect to the extent that it is not so credited.

These objections were disallowed and the final account, showing the administrator had in his possession belonging to the estate a balance of $86,231.12 after deducting the items totaling $493 which the administrator claimed credit for, was approved and settled. The court held further that the bank was not required to pay interest on the money belonging to the estate (the deposit) which the administrator took into his possession, and approved the account without such interest's constituting a part thereof.

From the orders allowing the $493 and refusing to charge the administrator with interest on the moneys of the estate in its hands for the full six months' period ending January 1st, 1928, Dario Orrantia and Arcelia Orrantia Viuda de Vera appeal.

The first assignment is that the court erred in allowing the amounts paid as a premium on the administrator's bond and in publishing notice to creditors for the reason that both of these expenditures were made pursuant to void orders. The position of appellants is that the court was without jurisdiction to appoint an administrator with the will annexed or to direct the issuance of letters of administration, because the validity of the will had been attacked prior thereto in a civil action filed in the proper court, and necessarily it could not then be known whether it was in fact the will of the decedent and consequently whether the estate should be distributed under the terms of the will or according to the laws of descent and distribution. This contention is sound, because it is clear under the authorities that the pendency of the contest in the Sinaloa court had the effect of depriving the superior court of Santa Cruz county of jurisdiction to take any further steps in the probate proceeding until the validity of the will had been determined, and the fact that it was being tried in a foreign country rather than in Santa Cruz county was wholly immaterial since the outcome could have been no more certain in one jurisdiction than in the other. "General letters of administration granted during the pendency of a contest respecting the probate of an alleged will," says 23 C. J. 1032, "are utterly null and void." *Poffinbarger* v. *Sumner,* 186 Ind. 597, 117 N. E. 646, 647; *In re Edwards' Estate,* 154 Cal. 91, 97 Pac. 23, 24; 1 Bancroft's Probate Practice, 615. In *Re Edwards' Estate, supra,* an application

for letters of administration, which disclosed that a will executed in due form had been filed with the court but that no one had asked that it be probated, was denied, the court saying among other things:

"It is not necessary here to say that the court, under such circumstances, is without power to adjudicate the matter until after the determination of the validity or invalidity of the purported will under proceedings for the proving thereof."

The superior court itself evidently entertained the view that it had no jurisdiction in the ancillary proceeding to admit the will to probate and appoint an administrator if a contest was in fact then pending in the Sinaloa court, the proper tribunal for such a proceeding, because it vacated these orders on December 24th thereafter upon the ground that they were prematurely made, a certified copy of the contest proceeding having been filed in the meantime. The only inference to be drawn from this action is that the will was approved and letters of administration ordered issued on November 17th because there was not then on file any proper proof of these proceedings, and while it is true that no such proof was produced that day the record discloses that the bank and the court, through the written objections of Dario Orrantia, were advised of the pendency of the contest before the request for postponement was denied and the petition for the probate of the will and the appointment of an administrator was granted. And it occurs to us that under these circumstances the only order that could properly have been entered was one continuing the hearing for a reasonable time to give Dario Orrantia an opportunity to produce an authenticated copy of these proceedings, since, if the contest really did exist and information relative thereto should later be produced in the regular way, the acts of the administrator pursuant to letters would necessarily be held

ineffective under such conditions, regardless of the fact that complete proof of the existence of the contest was not made that day. Having been advised through the pleading of Dario Orrantia, which was filed by his attorney, an officer of the court, of the pendency of the contest and knowing that its effect would be to render its acts void, it is clear that the administrator could not charge the estate with the expense incurred pursuant to such acts merely because a duly authenticated copy of the contest proceedings was not on file when its letters testamentary were ordered issued. One accepting appointment as administrator under such circumstances must be held to have done so with the knowledge that if the contest did exist and proper proof thereof should later be filed his acts pursuant to such appointment would be null and void, and any expenditures made by him as such, except perhaps those incurred in conserving the estate, would not be recoverable therefrom. *In re Myler's Estate (Kelly* v. *Kennedy)*, 133 Minn. 278, Ann. Cas. 1918D 164, L. R. A. 1917A 448, 158 N. W. 395.

If the court had felt at the time it admitted the will to probate and appointed an administrator that it would have had jurisdiction to make these orders even though proper proof of the pendency of the contest were then before it, it is apparent to us that it should in that event have proceeded upon the theory that such a showing would demand that it be treated as a plea in abatement calling for a suspension of the proceedings, at least, until the validity of the will should be determined in appropriate proceedings. Such is the view expressed by the court in *Re Edwards' Estate, supra:*

"It must be apparent, aside from the question of power, that the court should treat such a showing as equivalent to a plea in abatement, and at least suspend the hearing of the application for letters

until the question of the validity of the will has been determined in appropriate proceedings."

When there is delay in granting letters testamentary or of administration due to a contest of the will or to any other cause, paragraph 827, Revised Statutes of 1913, provides that a special administrator must be appointed to collect and take charge of the estate, and in California, whose Code of Civil Procedure contains paragraph 1411 of which 827 is an exact copy, the same method is followed. *In re Heaton's Estate,* 142 Cal. 116, 75 Pac. 662; *In re Woods' Estate,* 94 Cal. 566, 29 Pac. 1108. In *Re Edwards' Estate, supra,* this language appears:

"The law provides ample means for the protection of the estate until this shall have been accomplished. The situation presented is one which the law expressly contemplates may arise, and which it meets by turning the custody of the estate for its preservation into the hands of a special administrator. It is the simple case of the delay in granting letters testamentary or administration. Code Civ. Proc., § 1411."

The same rule prevails in Indiana as this excerpt from *Poffinbarger* v. *Sumner, supra,* will disclose:

"Until the validity of a contested will is finally determined the court in which the estate is pending cannot proceed with the administration further than it is authorized to do by sections 2753, 2754, 2755, Burns 1914, providing for special administrations."

The second assignment challenges the legality of the $15 paid for publishing notice of the hearing of the petition for probate and the $10 filing fee. It is contended that these are not proper charges because the executor was under no legal obligation to present the will for probate, but that his duty as its custodian was to deliver an authenticated copy of it together with a copy of the proceedings in Sinaloa, Mexico, admitting it to probate there, to the superior

court of Santa Cruz county which had jurisdiction of the portion of the estate in Arizona though not over the question of the determination of the validity of the will, and that the duty of the bank, which was acting at his request, went no further than his. It is not clear from the record that the contest had been filed and the executor served with summons in the action attacking the validity of the will prior to the filing of the bank's petition, and this being true there was nothing to interfere with the right given the executor by paragraph 737, Revised Statutes of 1913, to apply for the probate of the will when its application was made and the two items of expense incurred. If, however, the record clearly disclosed that the petition of the bank was filed subsequent to the institution of the contest and that the executor had been served therein, these items would have had the same status as the two just considered, but inasmuch as the event which deprived the superior court of Santa Cruz county of jurisdiction to proceed with the probate of the will had not taken place when the bank filed its petition and incurred these items, and inasmuch as the occurrence of this event did not nullify what had already been done but merely suspended further proceedings until the happening of a subsequent one—the determination of the validity of the will—the court was authorized to treat them as legal charges against the estate. The bank was not a mere volunteer, as claimed, but was acting upon the request of the executor who was first in right for the appointment but declined, and upon his declination the statute made it the duty of the court to appoint someone else, the provisions of paragraph 827, *supra,* we have just seen, requiring that in case of delay from any cause in granting letters testamentary or of administration the superior court "must appoint a special administrator to collect and take

charge of the estate.'' This provision, the record discloses, was complied with December 24th, immediately following the order setting aside the appointment of the bank as administrator with the will annexed.

Under the contract of deposit these funds drew four per cent interest per annum, which was added to the interest on the 20th of each month (instead of every six months as the objection to it stated), but the final account of the bank discloses that none was credited after October 20th following the death of decedent though the money remained on deposit in the commercial department of the bank subject to its use, the same as other deposits, until November 18th, the day the bank qualified as administrator, when it was transferred to the trust department in accordance with the requirements of the Federal Banking Law (12 U. S. C. A.). Immediately thereafter, however, it was retransferred to the commercial department for the purpose of use in the general business of the bank, upon the latter's leaving with the trust department interest-bearing bonds in an amount equal to the deposit as security for its return. These transfers were accomplished merely by book entries, the funds being in the commercial department of the bank for all practical purposes continuously from the time of decedent's death. Appellants contend that under these facts the account should have included interest on the deposit up to the time it was filed and that it was error to approve it for a sum less than this would have made it.

The relation between the bank and the depositor was that of debtor and creditor and after the death of the latter this relation continued to exist between the bank and the representative of the deceased. The bank could not in the lifetime of the decedent have ceased the payment of interest without giving her due notice of its intention to do so and it is clear that

it could not have done so afterward without notifying the personal representative of the estate to the same effect. The fact that there was no one in charge of the estate to whom notice could have been given prior to the bank's qualification as administrator did not relieve it from the necessity of giving such notice before its act discontinuing the payment of interest became binding. While its right to terminate the contract on any interest-payment day was in no degree dependent upon the other party's consent thereto, it was nevertheless a prerequisite to the exercise thereof that someone with authority to act for the estate have notice of such intention in order that he might take such steps as he thought best to protect it from the loss of the interest it was, under the contract, to earn while on deposit. Such person would doubtless have thought it necessary to insist on the agreement's being carried out and in case of refusal to have placed the funds where they would have continued to draw interest. If, however, due to the death of the depositor, the account had become an unprofitable rather than a profitable one as theretofore, and the bank for this reason had desired to change it to a noninterest paying one, it could easily have done so by procuring the appointment of a special administrator to whom notice could have been given.

This was not done, however, and, as we have just seen that the appointment of the bank on November 17th was null and void, it follows that there was no one lawfully in charge of the estate up to December 24th, when the record discloses a special administrator was appointed. But if this appointment had been permissible under the law the bank's obligation to continue the payment of interest would not have been affected thereby because it could not in its capacity as depositary notify itself in its capacity as administrator that it would no longer pay interest,

for it is plain that if it came to this decision as a bank its view as administrator of the estate would have been the same. The interests of the bank and those of the estate were in conflict in so far as the question of interest on the deposit was concerned, hence acceptance by the bank of the administratorship, whether regular or special, could only imply that it did so with the understanding that it would be necessary for it to continue to pay interest. The interests of the estate should be the first consideration of one placed in charge of it and the law does not permit one occupying a fiduciary relation of this character to profit from it. It is clear that it would have been the duty of anyone other than the bank, if appointed administrator, to have insisted on the payment of the interest as long as the funds remained on deposit, and there is no principle of law of which we are aware that would relieve the bank in the same position from discharging the same duty. In the *Appeal of Van Dyke et al.*, 183 Pa. 647, 39 Atl. 2, the administrator of an estate removed funds from a bank in which they were drawing interest on daily balances to his private bank where they remained for several years without the account's being credited with interest. The substance of the court's holding appears in section 1 of the syllabus which reads as follows:

"1. An intestate had kept an account with a bank for some time before his death, on which he was allowed interest on daily balances. Such account was continued by the administrator for several months, and then deposited to the estate's credit in his private bank, where the account ran for several years. Held, that the administrator was chargeable with interest."

It is clear that the final account should have included four per cent interest up to the time it was made, and that in so far as the order approved it

without this interest and in so far as it required the estate to pay the premium on the administrator's bond and the fee for publishing notice to creditors, it was erroneous. It is therefore reversed and the proceeding remanded to the superior court for action not inconsistent herewith.

LOCKWOOD, C. J., and ROSS, J., concur.