## In re YONK'S ESTATE. KIDMAN v. WATKINS.

No. 7064. Decided June 24, 1948. (195 P. 2d 255.)

368

See 34 C. J. S., Executors and Administrators, sec. 1040. Resignation or removal of executor, administrator, guardian, or trustee, before final administration or termination or trust, as affecting his compensation, see note, 94 A. L. R. 1101. See, also, 21 Am. Jur. 682.

*Preston & Harris,* of Logan, for appellant.

*Young & Bullen* and *George M. Bell,* all of Logan, for respondent.

LATIMER, Justice.

This is a second appeal in this matter. Our former decision, in which we held the lower court erred in appointing an administrator of its own choosing in preference to one designated by the next of kin, is reported in 111 Utah 196, 176 P. 2d 876. The present administrator prosecutes this appeal from a judgment of the lower court approving and allowing an account of the former and erroneously appointed administrator.

There are three assignments of error which are advanced by appellant, and they challenge four approved items in the account. We shall treat the assignments collectively and the items of the account separately.

The sequence of events involved in this phase of the controversy are these: The original petition to appoint an administrator was heard in the lower court on the 30th day of August, 1946. At that time the court announced the rejection of the designated administrator and the appointment of Mr. Watkins, the respondent herein. Counsel for the original petitioners, the next of kin, announced in open court the probability of an appeal to this court from the order as entered. On September 4, 1946, Letters of Administration were issued to Mr. Watkins and on the same date the Clerk of the Court ordered publication of Notice to Creditors. On September 17, 1946, notice of appeal to this court was served on Mr. Watkins, and filed with the Clerk of the Court, and on the 28th day of September, 1946, a cost and supersedeas bond was filed with the Clerk of the Court. This court on the 4th day of February, 1947, remanded the cause, with instructions to recall the Letters of Administration issued to Mr. Watkins,

and to issue new letters to Mr. William F. Kidman, the present administrator and nominee of the next of kin.

The removed administrator filed an account of his administration on February 13, 1947, and the present administrator filed an objection to certain items included in the account. The account and objections came on for hearing before the trial court on February 25, 1947, and on the 8th day of March, 1947, the Court rendered a judgment and decree authorizing and directing the administrator to pay all of the costs and expenses of administration including those items now objected to. This appeal questions the authority of the trial court to approve and direct the payment of attorney's fees, administrator's fees, administrator's bond premium and costs of publishing notice to creditors.

Counsel for appellant rely principally upon our holding in the case of *In re Cloward's Estate*, 95 Utah 453, 82 P. 2d 336, 119 A. L. R. 123. It is not necessary at this time to either affirm, overrule, or re-examine our holding in that case, as it has no application to the facts of this case. In that case the petition for appointment of an administrator was initiated by a total stranger to the estate. Under those facts we held the appointment to be void and refused to permit the party initiating the proceedings to recover his costs and expenses. In the case at bar, the proceedings were initiated by competent and preferred parties and the effect of our former decision in this case, was to hold the appointment of Mr. Watkins erroneous and not void.

The two cases most nearly in point are: *In re Owens' Estate*, 32 Utah 469, 91 P. 283, and *In re Pingree Estate*, 82 Utah 437, 25 P. 2d 937, 90 A. L. R. 96. In those two actions this court held the lower courts had erred in failing to appoint the preferred parties, but that the appointments were not void. In both instances the costs and expenses of administration up to the time of recall of the letters were allowable as charged against the estate.

The appointment in this instance merely being erroneous, the lower court did not err in allowing the respondent the sum of $75 expended for costs of his bond.

This item was a necessary exenditure regardless of whether or not the respondent be considered a general administrator or a special administrator.

Two other items, namely, the administrator's fee and the attorney's fee present a more difficult problem, not as to their being allowable items but as to the amounts awarded being excessive. The court in determining the amount to be allowed, used a proportionate basis, and having concluded the duties were 50% completed, awarded the administrator 50% of the statutory administrator's fee and made the same award to the attorneys. In the case of *In re Owens' Estate,* supra, this court held that if the fee is determined on a proportionate basis, the court must await completion of the proceedings before a proper and adequate apportionment can be made. Accordingly, were we to approve the apportionate method as being proper in this case, we would reaffirm the principle announced in the *Owens* case, and reverse the present judgment with instruction to determine the division of fees at the time of settlement of the proceedings.

We have, however, concluded that apportionment on the percentage of the work done is not a proper method to use when the appointment is erroneously ordered over the protest of those who have a preferred right. In many instances, a person who is first entitled to letters of administration is perfectly willing to serve without pay or at a reduced figure. In this particular instance the preferred administrator was a party to the original petition for Letters of Administration and agreed to serve without compensation. Preferred parties entitled to letters of administration as a matter of right should not be required to pay a proportionate part of the statutory fees of administrator's and attorney's fees to a stranger, when they have neither lost their rights to preference nor participated in the erroneous appointment. Neither should the distributive shares of the estate be unnecessarily diminished by costs and expenses incurred by one who has no interest in the residue. To use the proportionate method for determin-

ing fees in most instances pays the usurpers and the rightful occupant on the same basis and in some instances prefers the one who improperly occupies the office.

It is contended by respondent that he and his counsel acted in good faith. We agree that they were not parties to the original dispute, and only participated after the court designated Mr. Watkins to be the administrator. Nevertheless, they were charged with knowledge prior to their acceptance of the appointment that Watkins' appointment was to be the subject of an appeal. Assuming the best of faith on their part, did not the heirs and the next of kin also act in good faith?

However, we are here only concerned with a proper apportionment of costs and expenses because the lower court erroneously denied preferred persons their right of designation or choice. Our problem is to determine how costs and expenses are to be apportioned when all parties have acted in good faith.

The respondent having accepted an appointment with prior notice of a probable appeal and immediate steps having been taken by contestants to perfect the same, we have concluded that his appointment was in the nature of a special administrator, and that the amounts that should be awarded for his fees as administrator and his allowance for attorney's fees are such sums as would reasonably compensate a special administrator and his counsel who have been appointed solely for the purpose of preserving and protecting the estate. We are not prepared to state, under all circumstances, what services might go into preserving an estate, but in this case the record establishes that very little attention was necessary to preserve and save the assets.

Accepting respondent's evidence as to the duties he performed we have the following acts necessary to preserve the estate: The work necessary to obtain respondent's appointment as administrator; the draining of the radiator and the storage of the car to protect it from the elements; shutting off the water in the house to keep it from freezing;

verifying the bank account; taking inventory of the contents of the safety deposit boxes; and a limited number of conferences with his attorney for consultation about the foregoing duties. As for the services performed by the attorneys, the record establishes that they performed the services necessary in preparing the letters and order for appointment of administrator and held several conferences with the administrator.

Where the record bears out the fact that other services were performed by both the administrator and his attorneys, such as opposing an appeal to this court in the first appeal, such services cannot be considered in determining the sums to be awarded, because the costs and expenses of a losing party incurred in litigating the right of appointment as an administrator are not taxable against the estate.

We pass only on the facts of this case, and hold that when a stranger is appointed as administrator of an estate, over the protest of others who are preferred by statute, if the Letters of Administration are recalled by this court because of having been erroneously issued, then the removed administrator and his attorneys are only entitled to such reasonable compensation as should be awarded for services performed by or for a special administrator, appointed as a conservator. In arriving at the value of the services performed by a special administrator and his attorney, the measure is not based upon a percentage of the work done, as applied to the statutory fee, for general administrators, but upon the more limited basis of the reasonable value of the services performed in the limited capacities.

If, as we assume, reasonable fees for Mr. Watkins and his attorneys are contingent upon the character and extent of their services in restricted capacities, the amount of time devoted to the matter, the responsibility assumed by each, the benefit to the estate and the amounts usually charged in that area for like services, then it is apparent that, based upon these factors, as they are applied to a special admin-

istrator and his attorneys, the awards as made by the lower court are excessive. We are not disposed at this time to suggest what sums should be awarded. However, we do suggest the matter be re-examined by the trial court, evidence of the reasonable value of the services performed as a special administrator be taken, and lesser amounts more consistent with the work performed and less dependent on a proportionate part of the total fees be awarded.

Having determined the respondent was a special administrator, the amount expended for publication of notice to creditors was an unnecessary expenditure and, accordingly, this item should be deleted from the list of approved costs and expenses. In this connection, we have not overlooked the fact that a supersedeas bond is required to stay the execution of the order. However, this publication was an additional act performed by this administrator that would not have been required of a special administrator and under the facts of this case could not have been prevented by the contestants. Neither a notice of appeal nor a bond to stay further proceedings could have been filed in time to have prevented this as the erroneously appointed administrator obtained the order to publish notice to creditors at the same time letters of administration were issued to him. A notice of appeal would have been premature had it been served and filed prior to the time letters were issued, and when served after their issuance, it was too late to prevent the administrator from so publishing.

Reversed for further proceedings in accordance with this decision. Each party to bear his own costs.

McDONOUGH, C. J., and WADE, J., concur.

WOLFE, Justice (concurring in part — dissenting in part).

I agree with the prevailing opinion that respondent should be allowed to recover the sum of $75 expended for costs of his administrator's bond.

The question of the amount of fee to which respondent is entitled for his services as an administrator is one not free from difficulty. The majority of the court express concern that a stranger to the estate, having no legal preference to serve as administrator, may unnecessarily diminish the assets of the estate by receiving the statutory fee for his services, when one having a legal preference to serve in that capacity, might be willing to serve without fee, or for less than the fee authorized by statute. As said by Mr. Justice Latimer,

"Preferred parties entitled to letters of administration as a matter of right should not be required to pay a proportionate part of the fees of administrators, or the attorney's fee for a stranger, when they have neither lost their rights to preference nor participated in the erroneous appointment. Neither should the distributive shares of the estate be unnecessarily diminished by costs and expenses incurred by one who has no interest in the residue."

With this general principle I agree. However, the erroneously appointed administrator and his counsel, who have acted bona fide, are in good conscience entitled to some compensation for the beneficial services they have rendered to the estate.

In order to protect the assets of the estate, insofar as possible, from being diminished by their being paid out for administrator's fees, the prevailing opinion treats the errouneously appointed administrator as a de facto special administrator from the date of his appointment, and limits the amount of his fee to that allowed a de jure or statutory special administrator, namely the reasonable value of his services in preserving the assets of the estate. Such a rule may, in many instances, work satisfactorily. But there may be some cases where the reasonable value of work performed in preserving the assets of the estate may exceed the statutory administrator's fee. In such cases, the object sought to be attained by the rule laid down in the majority opinion will be defeated. And in cases where the appeal from the order appointing the erroneously appointed administrator is taken near the end of the time allowed for

appeal, the erroneously appointed administrator may have substantially completed the work of administration. To deny him compensation for such services may work a substantial injustice to him. For the erroneously appointed administrator is not an outlaw. From the time letters of administration are issued, at least to the time supersedeas bond is filed, he is a de facto if not a de jure general administrator.

Probably the best view from a purely theoretical standpoint would be to hold that the erroneously appointed administrator is a de facto general administrator from the date of his appointment until surpersedeas bond is filed, and a de facto special administrator from the date supersedeas bond is filed until his letters of administration are revoked by the court. Under this view, such an administrator would be entitled to a pro rata share of the statutory administrator's fee for services rendered by him during the period he was a de facto general administrator, and in addition thereto, to a fee for the reasonable value of his services in preserving the assets of the estate during the period he was a de facto special administrator. I think this rule would be technically and theoretically correct, but it might in some cases, result in the estate being burdened with excessive administrator's fees. I therefore suggest the following as a practical rule which will accomplish, substantially, the object sought to be attained by the majority, and will also be fair to the erroneously appointed administrator:

The court should first determine what amount will be allowed as administrator's fees for the particular estate. In fixing the amount, the court should be guided by Section 102-11-25, U. C. A. 1943, which fixes the administrator's fee at a fixed percentage of the value of the estate, and which further provides that in the event extraordinary services are rendered by the administrator, such services may be compensated by an additional allowance, but the total fee allowed shall not exceed twice the amount of the specified percentages. The statute thus places a

ceiling on the amount that may be allowed as administrator's fees. I think this ceiling is equally applicable to a case of this sort, where because of an erroneous order of the court, two separate administrators have been appointed. The compensation of an erroneously appointed administrator whose appointment was contested by the beneficiaries of the estate should not be such as to run the total charge of administrators' fees above that amount which would have been paid for the same services had the person entitled to be named as administrator been appointed in the first instance. This seems to me to be the cardinal rule governing compensation whatever we may call the wrongly named administrator or whatever duties he has performed either as a de facto special or general administrator.

The total administrator's fees will then be the statutory percentage plus any additional amount within the statutory ceiling which the court may allow for extraordinary services performed by either or both administrators.

These fees should be apportioned as follows:

(1) The statutory administrator's fees should be divided between the two administrators in proportion to the value of the ordinary services performed by each; provided, that in no case shall the erroneously appointed administrator receive more than the reasonable value of the services actually performed by him. In apportioning the fees the court will take into consideration the value of the services performed by each as general administrator, and also the value of the services performed by the erroneously appointed administrator as a de facto special administrator or conservator. In order to determine the proper portion to be received by each, it will probably be necessary for the court to determine the reasonable value of the various services rendered by each.

The rule which I here suggest can be better explained by some examples. Assume an estate for which the statutory administrator's fee is $1000. A is the erroneously appointed administrator, and B is the rightfully entitled administrator.

(a) The reasonable value of the ordinary administrative services performed by A is $100, the reasonable value of his services as a conservator is $100, and the reasonable value of the services of B, as general administrator, is $300. A has performed 40 per cent of the total services $(\dfrac{100 + 100}{500})$; but since 40 per cent of the statutory administrator's fee is $400.00 (.40 x 1000), which is greater than the reasonable value of the services performed by A, he will be entitled to receive as his share of the statutory fee only $200, the reasonable value of the total services rendered by him. B will receive the remainder as his share, $800 ($1000 - $200).

(b) The reasonable value of A's ordinary services as general administrator is $200, the reasonable value of his services as special administrator is $300, and the reasonable value of B's ordinary services as general administrator is $500. A's portion of the statutory administrator's fee is $500 $(\dfrac{200 + 300}{1000}$ x $1000 )$; and B's portion is likewise $500 $(\dfrac{500}{1000}$ x $1000)$.

(c) The reasonable value of A's ordinary services as a general administrator is $400, the reasonable value of his services as a conservator is $600, and the reasonable value of B's ordinary services as a general administrator is $1000. A's share of the statutory administrator's fee is $500 $(\dfrac{400 + 600}{2000}$ x $1000 )$ and B's portion is $500 $(\dfrac{1000}{2000}$ x $1000)$.

In further explanation it may be said that the erroneously appointed administrator (A), receives as his share of the administrative fees either (1) the reasonable value of the ordinary general administrative services rendered

by him plus the reasonable value of the services rendered by him as a conservator; or (2) that proportion of the statutory administrator's fee which the value of his ordinary services as general administrator and the value of his services as special administrator bears to the total value of all administrative services rendered to the estate by both administrators (excepting those services termed extraordinary general administrative services) *whichever is less.*

In fixing a value on the services performed by the de facto special administrator, the court should take into consideration the amount of time, skill, judgment, and work involved in performing the duties of a conservator. And in fixing a value on the services of general administrators the court should be guided by the fact that one of the chief reasons for allowing a general administrator's fee is to compensate the administrator for the risk and responsibility he assumes for a proper distribution under order of the court, of the assets of the estate. Hence, the administrator who must make the final accounting (in the examples, B) will in the ordinary case be entitled to a substantial portion of the statutory fee for the responsibility of properly distributing the assets of the estate. It appears that the court below failed to give sufficient weight to this factor.

(2) If either administrator has performed extraordinary services the court should make an additional allowance for such services, subject to the previously mentioned limitation that the aggregate amount of both the statutory fee and the extra allowance shall not exceed twice the amount of the statutory commission. Sec. 102-11-25, U. C. A. 1943.

If the total value of the extraordinary services performed by both administrators is less than or equal to the maximum allowed for those services by statute, each should be compensated on a quantum meruit basis for the services performed by each. If the total value of the extraordinary services rendered by both exceeds the statutory maximum,

then the statutory maximum, must be divided on a pro rata basis. This may be illustrated by further examples, based on the same hypothetical facts used in examples (a), (b) and (c), supra.

(d)    A renders extraordinary services as a general administrator of the reasonable value of $100. B renders no extraordinary services. A should be allowed an additional $100 fee.

(e)    Both A and B render extraordinary services of the reasonable value of $500. Each should be allowed an extra $500 fee.

(f)    A renders extraordinary services as de facto general administrator of the reasonable value of $1500 and B renders extraordinary services of the reasonable value of $500. A should be allowed an additional fee of $750 ($\frac{1500}{2000}$ x 1000), and B should be allowed an additional fee of $250 ($\frac{500}{2000}$ x 1000).

This appears to be a complicated formula for apportioning the respective value of services, but fortunately it is seldom that a person not interested in the estate is appointed administrator over the protest of the beneficiaries. I see no other way of giving to each of the administrators his proportion of the value of the normal and extraordinary services which he has performed and yet not exceeding the ceiling beyond which the estate should not be burdened because of the erroneous appointment of a contested administrator.

As to attorney's fees, I think counsel for each administrator should receive that proportion of the attorney's fee to be allowed, as the value of the legal services *beneficial to the estate* rendered by him bears to the total value of the legal services rendered to the estate. I agree with the majority that the services of respondent's counsel on the

appeal from the order appointing respondent as administrator are not allowable from the funds of the estate.

In any event, neither the amount of the administrator's fees and attorney's fees nor the proportion of such fees to be allowed to each of the respective administrators can be determined until final accounting is made. At any time before the estate is closed unforeseen developments may require additional time and work on the part of the administrator and his counsel. This will in most cases not only result in a greater administrator's fee and attorney's fee, but also a greater proportion of the whole being allowed to the second administrator and his attorney. It was error to attempt to pro-rate the attorney's and administrator's fees prior to the final accounting.

As pointed out by Mr. Justice PRATT, under the provisions of Section 102-14-19, U. C. A. 1943, all lawful acts in administration upon the estate performed by an erroneously appointed administrator, are as valid as though the order appointing him were affirmed. I therefore see no reason why respondent should not be allowed to recover costs of publishing notice to creditors. The prevailing opinion takes the view that respondent knew that the order appointing him as administrator would be appealed, and therefore he should have performed only those duties necessary to preserve the assets of the estate until this court had ruled on the appeal. To this view I must dissent. Although at the time respondent was appointed, counsel for appellant stated in open court that an appeal from the order would probably be taken, I do not think such was sufficient to stay the hand of the erroneously appointed administrator. Appeals may be threatened in the heat of contested legal proceedings, which never materialize, because counsel after calm reflection determines that such an appeal would not be wise. Until notice of appeal is served, *and* supersedeas bond is filed, the erroneously appointed administrator should proceed with the administration of the estate. He is not bound to allow the appeal time to elapse, before he commences his admin-

istrative duties, as distinguished from his caretaker duties. Otherwise, the administration of the estate might be unnecessarily delayed and for expenses necessarily incurred in performing these administrative services, the erroneously appointed administrator should be recompensed.

In summary my conclusions are these:

(1) The erroneously appointed administrator is, from the time of his appointment until a supersedeas bond is filed, a de facto general administrator, and has all the rights and duties of such. He is entitled to be reimbursed from the assets of the estate for any expenses necessarily incurred by him in performance of these duties.

(2) From the date supersedeas bond is filed, to the date his letters of administration are revoked, the erroneously appointed administrator is a de facto special administrator, with the limited duty of preserving the assets of the estate. Any services attempted to be rendered in further administration of the estate are not compensable, nor may he be compensated for costs incurred, except those costs necessary to preserve the assets of the estate. What constitutes preservation of the assets of the estate will depend upon the exigencies of each case.

(3) The services of the erroneously appointed administrator should be compensated for, on a proportional basis or quantum meruit basis, whichever is less, as indicated heretofore.

(4) The services of counsel for the various administrators should be compensated on a pro rata basis as heretofore indicated.

(5) The fees to be allowed the administrators and their attorneys should not be determined until administration of the estate is completed, nor should such fee be proportioned among the respective administrators and their counsel until administration of the estate has been completed.

As to that part of the prevailing opinion allowing respondent to recover the costs of his administrator's bond, remanding the case for further proceedings to determine the fees to be allowed respondent and his counsel, and denying the

right of respondent's counsel to fees for services rendered on the appeal of the order appointing respondent as administrator, I concur. As to that part of the opinion denying respondent costs incurred by him in publishing notice to creditors, I dissent. The trial court should be instructed not to make any determination of fees to be allowed, until administration of the estate is completed.

PRATT, Justice (dissenting).

I am afraid we are losing track of some of our code provisions. Section 102-14-19, U. C. A. 1943, has this to say:

"When the judgment or order appointing an executor, administrator or guardian is reversed on appeal, for error and not for want of jurisdiction of the court, all lawful acts in administration upon the estate performed by such executor, administrator or guardian, if he has qualified, are as valid as if such judgment or order were affirmed."

By section 102-9-1, U. C. A. 1943, the duty is imposed upon an administrator "immediately" after appointment to publish notice to creditors. This section says he "must" do this. He did just that in this case and yet we are not allowing him reimbursement for that expense. In view of the quoted section should we deny him that reimbursement? Were he a statutory special administrator, his duties would exclude that expense and the question would never properly arise. Sections 102-4-11 and 102-4-15, U. C. A. 1943. The prevailing opinion is merely treating him as the equivalent of a special administrator in order to cut down the fees to be allowed him—speaking of the time prior to the filing of the stay bond. After the stay bond is filed his duties of course would be limited, and logically such a limitation would cut off administrative duties as distinguished from merely preserving the estate—presumably no expense would be incurred pursuant to administrative duties that had been stopped by such a bond.

Incidentally, the provision covering commissions to be allowed administrators (Section 102-11-25, U. C. A. 1943)

says that the administrator "must" be allowed commissions on the amount of estate accounted for by him. In view of Section 102-14-19, quoted above, if he is entitled to any fee at all, must it not be measured with the measuring stick of this section, 102-11-25? If the legislature has fixed the method of evaluating administrative duties, have we any right to adopt any other method?

Mr. Watkins is not a statutory special administrator (see code citation above) ; and he is not a special administrator by any power exercised by the court. To treat him as a special administrator would be tantamount to saying that the contestants could determine his status by the procedure they adopt—by taking an appeal. Should they be permitted to stop administrative action on his part by announcing their intention to appeal thereby creating in his mind fear that if he proceeds he shall do so at his peril?

As much as I would like to limit the expense that an erroneously appointed administrator might charge up against an estate, I am afraid that it is a matter for the legislature not the court. For these reasons, I dissent.