405 P.2d 471

In the Matter of the ESTATE of
Julie H. PITT, Deceased.

A. C. KALKBRENNER, individually and as Special Administrator of the Estate of Julie H. Pitt, Deceased, and Anchor Casualty Co., a corporation, Appellants,

v.

Guy ANDERSON, Executor of the Estate of Julie H. Pitt, Deceased, Appellee.

FIRST NATIONAL BANK OF ARIZONA,
Appellant,

v.

ESTATE of Julie H. PITT, Deceased,
Appellee.*

Nos. 1 CA–CIV 46, 1 CA–CIV 53.

Court of Appeals of Arizona.

Sept. 10, 1965.

---

\* This appeal was filed with the Arizona Supreme Court and assigned that Court's numbers 7744 and 7831. The matter was

referred to this Court pursuant to Section 12–120.23 A.R.S.

Moore, Romley, Kaplan, Robbins & Green, by Kenneth J. Sherk, Phoenix, for appellants.

Jennings, Strouss, Salmon & Trask, by Ozell M. Trask, Phoenix, for appellees.

DONOFRIO, Judge.

This is a consolidated appeal of two cases involving substantially the same parties but totally different questions of law. For the sake of convenience we shall treat each separately in the opinion.

The first case is an appeal by a Special Administrator and his surety from a judgment of the Superior Court of Maricopa County, disallowing certain expenditures for which the Special Administrator sought credit in his final account, surcharging him, and denying him the amounts requested to be allowed as Special Administrator's compensation and attorney's fees.

Julie H. Pitt died testate leaving as her heir at law, A. C. Kalkbrenner, Appellant, and as the principal beneficiary of her Will, Guy Anderson, Appellee. Prior to the time of her death, her estate had been administered by Appellee in the capacity of Guardian. Upon Mrs. Pitt's death, Guy Anderson, named Executor in her Will, petitioned the Superior Court to admit the will to probate. Kalkbrenner opposed the petition, alleging as grounds that decedent's signature to her purported will had been obtained by Anderson by means of undue influence. At the trial of the Will contest, the jury rendered a verdict for the contestant, and the Will was not admitted to probate.

On appeal the case was reversed and our Supreme Court held:

"Upon Anderson's denial that he influenced or attempted to influence Mrs. Pitt in the disposition of her property, any presumption of undue influence disappeared. It was thereafter incumbent upon the contestant to prove it by clear and convincing evidence. The verdict of the jury is supported by nothing beyond speculation, suspicion and bottomless inference.

"The judgment of the lower court is reversed, and the case remanded with instructions to admit the will to probate." In re Pitt's Estate, 88 Ariz. 312, 318, 356 P.2d 408, 412 (1960).

Shortly after the jury rendered its verdict and before the disposition of the case on appeal, Kalkbrenner was appointed Special Administrator of the decedent's estate in a proceedings held without notice to Anderson. The Superior Court denied Anderson's subsequent petition to have Kalkbrenner replaced as administrator by a disinterested person pending the appeal.

Kalkbrenner opposed Anderson's final account as Guardian of Mrs. Pitt's Estate. After a six day hearing, the Court approved Anderson's account but allowed him approximately $22,000.00 less than he had requested for fees and reimbursement of expenditures alleged to have been made on decedent's behalf.

After the successful appeal and following the appointment of Anderson as Executor of the Will, Kalkbrenner made his final accounting as Special Administrator, which Anderson opposed. At the conclusion of the hearing, the Superior Court made findings and granted the judgment from which the appeal now considered was taken.

In the Findings of Fact, the trial court found that Mrs. Pitt's estate consisted principally of securities contained in her safety deposit box, the house in which she had resided, and a number of promissory notes secured by First Mortgages. The trial court found that Kalkbrenner deposited interest and dividends in a bank account as they were collected, purchased time deposit certificates, and rented the Pitt house to his son for a few months at $60.00 per month and thereafter occupied it himself, rent free, for a period of 28 months. It further found that Kalkbrenner did not file the necessary periodic accounts of his administration, failed to deliver the assets of the estate to Anderson until the latter had served him with an Order to Show Cause, and neglected to file State and Federal Income Tax Returns on behalf of the estate or to pay said taxes when they fell due, thereby subjecting the estate to possible penalties exceeding $1,300.00 and to actual penalties of $449.31. The trial court also found that Kalkbrenner had failed to pay local property taxes on the estate, and had neglected to reinvest United States Bonds when they fell due and ceased to bear interest. Other findings of fact were that

the attorney for the estate did not perform or have Kalkbrenner perform the obligations in which he defaulted, and that such default caused the estate to incur additional accounting expenses, that Kalkbrenner did not secure the approval of the Court prior to making disbursements of estate funds, and that Kalkbrenner expended estate funds upon the Pitt residence for his own convenience as occupant without securing Court approval therefor.

As conclusions of law, the trial court found that under A.R.S. § 14–376 the entire special administration had been unnecessary, that as a consequence Kalkbrenner was entitled to receive neither fees nor compensation for his services nor attorney's fees, except fees on the basis of "quantum meruit" for services performed of actual advantage to the estate, and that no benefit was conferred on the estate in resisting the final account of Guy Anderson as Guardian, or in defending the appeal of the Will contest, or defending appellant's final account as Special Administrator. Kalkbrenner and his attorney were each allowed $1,000.00 for their services. No attorney fees were allowed for the litigation attending the final account of Kalkbrenner as Special Administrator. Kalkbrenner was surcharged $60.00 per month for 28 months as the reasonable value of occupying the Pitt house for that period of time, and disbursements in the total sum of $3,392.30 were disallowed in his accounting. Most of said disbursements were made for the purpose of maintaining and improving the Pitt house. The Special Administrator was further surcharged $449.31 for tax penalties incurred.

Kalkbrenner, on this appeal contends that the trial court erred in disallowing $1,804.97 for repairs and improvements made to decedent's house, surcharging him for the occupancy of the house, and denying him normal fees and attorney's fees for his services to the estate.

■ In deciding this case on appeal, we are asked to review many factual determinations of the trial court. It is the law in this jurisdiction that findings of the trial court on a question of fact may not be disturbed on appeal if there is reasonable evidence in the record to sustain them. In re Wagner's Estate, 75 Ariz. 135, 252 P.2d 789 (1953); In re Taylor's Estate, 56 Ariz. 211, 106 P.2d 492 (1940).

■ Neither party nor this Court has succeeded in finding any Arizona case controlling the matter of surcharging Appellant for the rental value of Mrs. Pitt's house during the period he occupied it. Both parties have cited cases from other jurisdictions in which the decision of the courts to surcharge a personal representative for his occupancy of estate property has been based upon a determination by the trier of fact whether such occupancy was for the purpose of preserving the trust estate or for the private advantage of the personal representative. Since the facts of the cases cited differed from those of the case before us, we deem it unnecessary to discuss them. However, it is necessary to set forth a few principles governing special administrators. It is the policy of the law to keep the administration of decedents' estates in the hands of regularly appointed administrators and executors and to rely on special administrators only in cases of emergency and for a limited time. Vaught v. Struble, 65 Idaho 26, 139 P.2d 456, 148 A.L.R. 269 (1943).

■ Statutes vary in the authority granted a special administrator, but the cases generally provide, which we declare to be the rule in Arizona, that his powers are to be strictly construed; that his authority must be found in the statutes and in the orders of the probate court. Cobbell v. Crawford, 120 S.W.2d 1085 (1938) (Tex. Civ.App.); Little v. Gavin, 244 Ala. 156, 12 So.2d 549.

A.R.S. § 14–443 provides:

"The special administrator shall collect and preserve for the executor or administrator the personal property of decedent, take charge and management of, enter upon and preserve from damage, waste and injury, the real proper-

ty, and for such purposes may commence and maintain, or defend, actions and proceedings as an administrator."

The order of the court appointing appellant Kalkbrenner provided that:

"He be and he hereby is authorized to collect and take charge of the estate of said deceased * * * and to exercise such other powers as may be necessary for the preservation of said estate."

Kalkbrenner obtained no previous order or subsequent approval for the repairs, improvements or occupancy of the house.

Appellant cites In re Moore's Estate, 88 Cal. 1, 25 P. 915 (1891) for the proposition that prior approval is not indispensable. This was a case where the special administrator had exceeded the sum fixed by the court to be expended in repairing the property of the estate. The court therein said and which we cite with approval:

"If it becomes necessary during his management to make any repairs, his expenditures therefor must be sanctioned by the court appointing him, either by previous order or by subsequent approval, before he can reimburse himself from the funds of the estate. A prudent person would obtain from the court an order therefor before making such repairs, but it is not an indispensable requisite that he should do so. If he is willing to forgo such protection, and to rely upon his belief that the court will ratify his acts, there is no rule of law which will deprive the court of the power to reimburse him if his acts and expenditures are approved." 25 P. 916.

■ The trial court must determine, whether under all the circumstances, the repairs were necessary, and the expenditures reasonable. These matters must of necessity be left to the discretion of the judge, and unless it appears that such discretion has been abused, it will not be disturbed. In re Moore's Estate (supra).

■ The trial court found, from the evidence before it, that the Appellant's occupancy of the Pitt house was for his own private advantage, not for the benefit of the estate. Appellant does not contend that the surcharge was improper if the court was correct in the above finding and correct in its finding as to the rental value of Mrs. Pitt's house during the period Appellant was in possession of it. We have examined the record and found ample evidence from which the trial court might have concluded as it did as to the purpose and effect of Appellant's residence. Appellant made no effort to rent the house after his son moved out; he altered and redecorated it to his taste; and there was no showing that the house could not have been rented.

■ The trial court allowed payments made by Anderson to one Belle North, who had been employed to care for decedent during her lifetime, for occupying and caring for Mrs. Pitt's house after her death. Appellant contends it was inconsistent to allow Mrs. Belle North a sum for staying in the house and to charge Appellant for the same thing. We are not presented with the question of whether the lower court should have allowed Guy Anderson's disbursements to Mrs. North for acting as Custodian of the Pitt house. However, her case can be distinguished in that Mrs. North had cared for Mrs. Pitt and upon her death there were many responsibilities such as, collecting and taking inventory of things in the house and getting it ready for the executors.

Appellant argued that his residence in the house was essential to protect it from the ravages of tenants or prolonged vacancy, but the trial court, after hearing the evidence, was of a contrary opinion. Absent a showing that the trial court acted arbitrarily this court will uphold its determination of facts.

■ We disagree with Appellant's contention that the rent paid by his son for the Pitt house did not constitute evidence of its rental value. Appellant's son was the most recent person to have rented the premises

as a tenant. The family relationship between appellant and his only tenant affects the weight of the evidence, but does not rob it of all probative value.

Accordingly, we hold that under the facts of this case, the lower court did not err in surcharging the Special Administrator the sum of $1680.00 as the rental value of the Pitt house during the period of his occupancy.

■ Appellant argues that the lower court erred in disallowing expenditures which he made for the purpose of improving and maintaining the Pitt house. We have examined the record and found that the court below received sufficient evidence tending to show that appellant expended said funds for his own convenience as occupant of the house to find as it did without committing an abuse of discretion.

Appellant's final contention is that the trial court abused its discretion in limiting Appellant and his attorney to the sum of $1,000.00 each for their services, and erred in its conclusion that the special administrator and his attorney were not entitled to compensation except on a basis of quantum meruit, and that certain services performed by them were of no value to the estate.

■ A.R.S. § 14–662, which contains the statutory compensation schedule of Executors and Administrators, does not, by its terms, purport to govern the fee to be allowed to a Special Administrator as compensation for his services. Appellant argues that it does constitute a standard for the Court to employ in the exercise of its discretion in fixing the compensation. We hold that in arriving at the value of the services performed by a special administrator and his attorney, the measure is not based upon a percentage of the work done as applied to the statutory fee for general administrators, but upon the more limited basis of the reasonable value of the services performed in the limited capacities. The fee should depend on the amount of time devoted to the matter, the responsibility assumed, the benefit to the estate and the amounts usually charged in that area for like services. In re Yonk's Estate, 113 Utah 367, 195 P.2d 255, 4 A.L.R.2d 150 (1948).

■ The Court below had ample evidence to sustain its conclusion that the Special Administrator failed to perform the duties imposed on him by law. He did not file the periodic accounts required of him by law; he omitted to prepare and file State and Federal Tax returns, or to pay the taxes when they fell due; he permitted funds of the estate to lie idle without drawing interest, and he used or occupied real property of the estate for his own private advantage. In the light of the foregoing, the trial court did not abuse its discretion in determining to limit the compensation of the Appellant and his attorney to compensation in quantum meruit for services performed of actual advantage to the estate even assuming the trial court erred in saying that Special Administration had been unnecessary.

■ Among its Conclusions of Law, the trial court stated that Special Administration had been unnecessary and that under A.R.S. § 14–376 the cost of such administration was chargeable to Appellant as a result of his having failed in the Will contest. Appellant argues this is not a correct statement of the law. We believe Appellant correct in this contention. A.R.S. § 14–441 provides that "[w]hen there is delay in granting Letters testamentary or of administration from any cause * * * the court shall appoint a special administrator * * *." The delay caused by reason of the will contest herein, was a proper cause for the appointment of a Special Administrator. In re Orrantia's Estate, 36 Ariz. 311, 285 P. 266 (1930).

A.R.S. § 14–376 which is found in our Code under the article entitled "Contest of Will after Probate" provides:

"The fees and expenses shall be paid by the party contesting the validity or probate of the will, if the probate is confirmed."

■ This section is concerned with the costs and expenses of a will contest after probate and not with the costs and expenses incurred in a special administration.

Irrespective of its reasoning the probate court had the power under the circumstances of this case to fix the fees on the basis of quantum meruit for service of benefit to the estate. In exercising this power he is governed by equitable principles. Our Supreme Court in Reilly v. Clark, 2 Ariz. 299, 15 P. 141 (1887) speaking of the probate judge said:

"Perhaps in no department of official life are the trusts reposed by law—more sacred than here. Once in every three or four decades, the estates of the citizens pass through the process of administration. Administrations and guardianships have not always been economical and pure, probably nowhere has there been greater abuse of trust in this country, then in administrations and guardianships."

The trial court found that the services of Appellant's attorney in opposing the accounting of Guy Anderson as Guardian of Mrs. Pitt's estate were of no value to the estate. This conclusion was reached notwithstanding that the corpus of the estate was increased by a sum in excess of $22,000.00 as a direct consequence of that attorney's labors during the long hearing on Mr. Anderson's accounting. Of course, said savings were of no benefit to the ultimate distributee of the estate, who proved to be Mr. Anderson, but according to A.R.S. § 14-443, Appellant's duty was to safeguard and preserve the estate itself for the executor or administrator, and the services of Appellant's attorney were of value for that purpose.

The fact that the estate ultimately may have been distributed to appellee does not detract from the fact that in the processes of probate the court representing the public has an interest in a legally correct accounting.

■ We hold that the trial court erred in concluding that the services of Appellant's attorney in contesting the accounting of Mr. Anderson were of no value to the estate, and abused its discretion in denying him compensation therefor.

Our Supreme Court in Roberts v. Malott, 80 Ariz. 66, 292 P.2d 838 (1956) held that it had the power to modify an order of the Superior Court fixing attorneys fees when it had all the facts before it.

■ We hold that under the statutes defining the jurisdiction and venue of this court, A.R.S. § 12-120.21, we likewise have the power to modify an order of the Superior Court fixing attorney fees when we are in possession of all the facts.

The claim for attorney fees shows the amount of work done by counsel, and we are cognizant of the six day hearing with its attendant preparation as reflected by the worksheets and memorandum briefs filed.

■ The judgment below should be modified to provide for an allowance of $6000 compensation to appellant's attorney, the same being composed of the sum heretofore awarded, plus $5000 compensation for services in contesting the guardian's account.

In this case the judgment except as hereinabove modified is affirmed.

We next consider the appeal of the First National Bank of Arizona against the Estate of Julie H. Pitt, deceased.

The First National Bank of Arizona hereafter referred to as "Bank", assignee of the legacy to A. C. Kalkbrenner under the will of Julie H. Pitt, appeals from an order of the Superior Court allowing Guy Anderson, as Executor of the Estate, to withhold and setoff the sum of $1,949.87, plus interest thereon, from a legacy of $2000 due A. C. Kalkbrenner from the said estate. The $1,949.87 represents $144.80 in costs incurred by Anderson on the trial of the will contest instituted by Kalkbrenner and $1,805.07 in costs to Anderson in prosecuting the successful ap-

peal from a judgment denying the probate of the will of Julie H. Pitt.

In this appeal the Bank asserts that the order allowing setoff and denying its petition for distribution of Kalkbrenner's legacy was erroneous because it permitted Anderson, in his representative capacity as Executor, to setoff a claim due him individually. Anderson resisted the Bank's position asserting that the costs were not awarded to him as an individual and that the Estate was entitled to setoff the costs against the legacy, and that the will nominated him as Executor and that pursuant to this nomination he filed the petition to probate which was contested by Kalkbrenner, appellant's assignor.

Appellant Bank cites us to Los Angeles County v. Morrison, 15 Cal.2d 368, 101 P. 2d 470, 129 A.L.R. 443 (1940); Lindley v. United States, 59 F.2d 336 (9th Cir. 1932); and 33 C.J.S. Executors and Administrators § 22, p. 904 for the proposition that an executor named in a will is not in any way a representative until officially appointed by the court. We do not read these cases as standing for the proposition appellant sets forth. Los Angeles County v. Morrison (supra) and Lindley v. United States (supra) are distinguishable on their facts.[1] And 33 C.J.S. Executors and Administrators § 22 says:

"However the modern view is that, while an executor's authority is derived *primarily* from the will, it is not derived *solely* therefrom in the sense that mere nomination * * * is sufficient to constitute one an executor, but the *full* powers of an executor come from the court of probate jurisdiction * * *." (Emphasis supplied.)

It is the opinion of this court that this does not stand for the proposition that all authority of the executor comes from the probate court after confirmation. Nor that it precludes a named executor from exercising the authority imposed upon him to uphold the will.

The Arizona Supreme Court in In re Monaghan's Estate, 60 Ariz. 346, 137 P.2d 390 (1943) has had occasion to pass upon the duties of an executor named in a will when confronted with a will contest before probate:

"It is our opinion that there is a mistaken idea about the duty of the executor appointed by will and from decisions read it appears that he *must*, in duty to his trust, protect the instrument when it is assailed in court." (Emphasis supplied.)

And to this there should be added the requirement of good faith in resisting a contestant's attack on the will. See 40 A.L.R. 2d 1423 § 5 citing authorities therein. The right of the person named executor in the will to resist a contest is not impaired by the circumstance that he has not been confirmed and duly appointed by the probate court. Since duty and the law require an executor to defend in a will contest before probate, he should not be required to defend at his peril. The peril, if any, should be with him who seeks to upset the will.

---

1. In Los Angeles County v. Morrison (supra) the named executor had qualified as executor. The question involved a property tax liability assessed against the estate and not against the executor individually as the executor contended. A specific statute required separate designations when liability was to be imposed against the executor both in his representative capacity and his individual capacity.

In Lindley v. United States (supra) the named executor had qualified as executor. The question involved the liability for an erroneous estate tax refund. The refund was paid to the executors and by them distributed to the legatees pursuant to an order of the probate court. The United States then instituted suit against the executors in their representative capacity and against them individually as they were in part the legatees. Held: the executors are not liable in their representative capacity but they were in their individual capacity.

The expenses of attorney's fees incurred by the executor in attempting to uphold the will in a contest have been awarded him against the estate on the theory that he was under a duty to uphold the will. 21 Am.Jur. 690, Executors and Administrators § 549. Although this concerned attorneys' fees before probate, there does not seem to be any valid distinction between attorneys' fees and costs.

The California Court in In re Olmstead's Estate, 120 Cal. 447, 52 P. 804 (1898) stated:

"The proceedings for the probate of a will are antecedent, and necessary to the appointment by the court of a representative to administer the will or estate. Until this question is determined, the parties in interest in such estate are in some respects authorized to represent the estate. They direct and conduct proceedings which may or may not determine the manner of its distribution, and thus affect vitally the estate itself. The power to determine these vital questions rests in the courts. Costs and expenses are a necessary incident of the exercise of these powers. * * * We find nothing in the mere fact that no administrator had been appointed to militate against the validity of the allowance, and are of the opinion that, if authorized to do so, the allowance of the cost bill and attorneys' fees against the estate was valid and binding, notwithstanding there was no administrator at the date thereof." 52 P. 805–806.

The Arizona Supreme Court has had occasion to pass upon the weight to be given interpretations by the California Court of its probate code. In In re Nolan's Estate, 56 Ariz. 366, 108 P.2d 391 (1940) the court stated:

"Our probate law is taken from California and we have frequently followed the courts of that state in its construction." 56 Ariz. 373, 108 P.2d 394.

■ This case has as its gravamen whether the court has authority to require the costs assessed against the unsuccessful contestant to be paid to the estate. The trial court must have determined this in the affirmative since it allowed the offset notwithstanding that the judgment for costs read in Mr. Anderson's name. There being no statutory rule in fixing costs in a will contest before probate it lies in the sound discretion of the probate court applying equitable principles to fix the costs. The general statute on recovery of costs provides that the successful party shall recover from his adversary. A.R.S. § 12–341.

The Supreme Court reversed this case on appeal and admitted the will to probate which was the subject of the contest. The successful party was in fact the estate. To allow Mr. Anderson the right to reimburse himself once from the estate and then to contend that he is entitled in his individual capacity to the award for costs imposed against Mr. Kalkbrenner, would be a gross inequity. We believe the court was correct in saying that this recovery then goes to the estate for whose benefit the costs were incurred.

We affirm the lower court on the authority of Shattuck v. Shattuck, 67 Ariz. 122, 192 P.2d 229 (1948) wherein the court noted that our constitutional provision concerning the powers of the probate court were the same as California's:

"Of a similar probate code of California it was said by the United States Supreme Court: 'In view of these provisions, it is difficult to conceive of a more complete and effective probate jurisdiction, or one better calculated to attain the ends of justice and truth.'" 67 Ariz. 128, 192 P.2d 232.

■ The Bank claims as assignee of the legacy of Mr. Kalkbrenner, the assignor. An Assignee can claim no greater rights than his assignor. Teater v. Good Hope Development Corp., 55 Cal.App.2d 459, 130 P.2d 812 (1942). Therefore, since we have decided that the executor may offset the legacy due Mr. Kalkbrenner with the award

assessed against him for costs incurred in the unsuccessful will contest before probate, the offset may be asserted against the bank as assignee.

Judgment affirmed.

STEVENS, C. J., and CAMERON, J., concur.