(Decided May 27th, 1864.)

JOHN H. ING, EXECUTOR OF REBECCA MONTEITH, *vs.* THE BALTIMORE ASSOCIATION, FOR IMPROVING THE CONDITION OF THE POOR.

RIGHT OF EXECUTOR TO RETAIN ASSETS TO MEET A LEGACY.—The retention of assets to satisfy a legacy bequeathed by the will under which the execu-

tor acts, is an imperative legal duty in discharge of his official obligation, . if there are assets sufficient to pay preferred claims.

CODE, VOL. 1, ART. 93, SEC. 108:—RIGHT OF EXECUTOR TO RETAIN ASSETS TO MEET A CLAIM AGAINST THE ESTATE.—The retention of assets to meet an unliquidated demand against the estate of the testator, is not the right of the executor, but rests in the discretion of the Orphans' Court.

LIABILITY OF EXECUTOR FOR INTEREST.—If the Court observes that an executor keeps money dead in his hands, without any apparent reason or necessity, then it becomes negligence and breach of faith, and the Court will charge the executor with interest.

————: Where an executor, without the sanction of the Orphans' Court, retains assets to meet a demand against the estate, policy as well as duty requires that the assets so retained should be made to earn interest to meet accruing interest.

APPEAL from the Orphans' Court for Baltimore City :

The facts of this case are fully stated in the opinion of the Court :

The cause was argued before BOWIE, C. J., BARTOL, and GOLDSBOROUGH, J.

*John H. Ing,* for the appellant :

The appellant submits there was an apparent reason for the appellant retaining in his hands, the apparent balance stated in the second account to be due the estate; he had to do so to meet the claim of Mrs. Coulson; clearly the executor could not pay it to the appellee.

The appellant submits, that upon the appellee rests the burden of proof, that the executor received interest or made use of the money for his own profit or advantage. Upon the hearing of the appellee's petition in the Orphans' Court, no allusion was made to the question of interest in the argument of the case. The appellant supposed, from the appellee not offering proof, or even asking the question, whether the money had been used, that the question of interest had been abandoned. The amount, it is true, is small, but the principle involved is important.

The appellant asks the Court of Appeals to reverse the de-

cision and order of the Orphans' Court, requiring him to charge himself with interest, for the reasons set forth in the decision of the Court of Appeals, in *Mickle, Adm'r of Campbell, vs. Cross, Adm'r of Neilson*, 10 *Md. Rep.*, 352 to 363.

*E. Otis Hinkley*, for the appellant :

The fact that stocks bearing interest were sold by an executor, and that no disposition whatever was made of the money, is alone sufficient without evidence of what he did with it, whether he made use of it or not, to charge him with interest which he might or ought to have made. But, independently of this, he had no right to keep this money idle, and to keep an estate open three and a half years, on account of a stale claim more than twelve years old when the petition was filed. Or if, from conscientious motives, he chooses to refrain from using the means which not only the Statute of Limitations, but the testamentary system affords him, of barring this claim and settling the estate, he ought, at least, to have put the money at interest in some way. *Matthew*, ch. 25, verse 27. *Williams on Executors*, 1132. *Lyles vs. Hatton*, 6 *G. & J.*, 122. *Thomas' Adm'x vs. Frederick Co. School*, 9 *G. & J.*, 115. *Coward vs. Worrell*, 7 *G. & J.*, 475. The case of *Mickle vs. Cross*, 10 *Md. Rep.*, 353, cannot be compared with this, for there the executor repeatedly tendered the money, and it was upon that ground solely, that LE GRAND, C. J., concurred. See 10 *Md. Rep.*, 363.

In all other cases in which executors have not been charged interest, they have acted with due diligence and in good faith, which the executor did not do in this case; for he sold stocks, bearing interest, unnecessarily;—had three citations, and an attachment for contempt, issued against him, before he would settle his first account;—delayed three and a half years, without either paying the claimant or the legatee;—threatening one with the plea of limitations, to deter her, and setting up the claim against the

other, as an excuse for not paying it. And finally, after three years and a half, upon being brought in upon petition, setting up in his answer that the claim was in suit, when in fact, it was not, and then attempting to make it true, by making haste a few days after this answer was filed, to docket the suit on the claim by consent, back, as of a prior day.

BOWIE, C. J., delivered the opinion of this Court:

Rebecca Monteith, late of the City of Baltimore, on the 7th April 1858, made her last will and testament, bequeathing, after the payment of her just debts, (of which she declared she did not then owe any,) certain small pecuniary legacies, and further devising as follows:

"I am desirous of disposing of such worldly effects as I may die seized or possessed of, so that the poor may be benefited thereby, and with that view, I do direct my executor hereinafter named, immediately after my death, to sell my property, and to sell at such time as in his judgment the most can be realized therefor, and the proceeds thereof pay to the Baltimore Association for the improvement of the condition of the poor, "to be by them used in purchasing wood and other fuel and provisions for the benefit of the poor," and appointing the appellant her executor. This will was proved on the 26th August 1858. It does not appear from the record when letters testamentary were granted.

The appellant, as executor, passed his first account on the 31st March 1860, showing a balance in his hands at that date of $1397.53.

| Consisting of specifics, | - | - | $20 | 00 |
| Bank stock, | - | - | 440 | 00 |
| Cash, | - | - | 937 | 53 |
| | | | $1397 | 53 |

On the 15th March 1861, the appellant filed his 2nd account showing a balance of $592.16, of which he proposed

430          MARYLAND REPORTS.

Monteith's Exc'r vs. Balto. Association, &c.

to retain $191.15, to be appropriated, under the will, to enclosing the remains of the testatrix, with granite curb and iron railing, and leaving $401.01, which he informed the Court was not in his opinion distributable, because of notice given the executor of a claim for personal services rendered by a Mrs. McIntyre, her husband and family, to Miss Monteith, amounting to $520; he thought the claim extravagant, but should be guided in pleading limitations by the judgment of Professor Smith and Dr. Knight, and if the claim should be defeated, there would be a bill against him as executor, for professional services and Court charges. The appellees on the 3rd March 1862, filed their petition against the appellant, praying he may be required to pass a third special account and pay to them as legatees any money properly coming to them; that the money now in his hands, if not now payable to them, may be invested, and claiming interest on the amount in his hands not invested: "and if there be any claimant against said estate for whose claim it is necessary that any money should be held and not paid over to the Association, then the said executor may be ordered by this Court, to take such proceedings as may be legal and proper to ascertain said claim and debar said claimant from the right further to delay said executor in the settlement of said estate."

The appellant filed two answers to this petition, which virtually assume the same ground for the non-payment of the balance in his hands, which he relied on in the statement, annexed to his second account, viz: that there was an outstanding claim against the estate, which was in the course of litigation, and which he was entitled by law to retain assets sufficient to satisfy.

General replications were filed to these answers, and depositions taken on behalf of the appellants, to prove the existence of the claim and some docket entries and documentary evidence filed.

The decree of the Orphans' Court passed on the 29th March 1862, requires the appellant to bring into Court on

or before the 21st of April next, the sum of three hundred and fifty dollars, and that he charge himself with interest in his third account to be rendered to the Court on the sum of five hundred and ninety-two dollars and sixteen cents, from the date of his last account, and that he reserve and apply the sum of one hundred and ninety-one dollars and fifteen cents to carry into effect the provisions of the will. From which decree the appellant prosecutes this appeal.

The appellant insists, he is not properly chargeable with interest under the circumstances, and for the reasons assigned, and relies on *Mickle, Adm'r of Campbell, vs. Cross, Adm'r of Nelson*, 10 *Md. Rep.*, 352.

There is very little similarity between the case cited and that before us. The Court in that case expressly disallow the interest charged by the Orphans' Court against Campbell's estate, because it was in proof Mr. Campbell had repeatedly offered to pay the legacy (the fund on which the interest was claimed) to Judge Purviance, the legatee in trust, and he declined it, yet would not renounce or put in writing any thing to indicate his refusal to accept, or renounce or release the same. The executor therefore retained stocks and cash to enable him to pay the legacy "so soon as the legatee should be prepared to receive it." And this retention appears in the administration accounts passed by the Orphans' Court.

The retention of assets to satisfy a *legacy* bequeathed by the will under which the executor acts, is an imperative legal duty in discharge of his official obligation, if there are assets sufficient to pay preferred claims. The retention of assets to meet an unliquidated demand against the estate of the testator, is not the right of the executor, but rests in the discretion of the Orphans' Court. The proceedings in the record show the Court below did not sanction such an application of the assets. A considerable proportion of these assets consisted of stocks bearing interest, and it does not appear but they were still retained by the executor. The first and second accounts show that he

held forty shares of Franklin Bank stock, which constituted by presumption of law a part of the balance of the second account on which interest is ordered to be charged.

It is unnecessary to comment on the stale character of the demand. If the claim was disputable, policy, as well as duty, required that the assets should be made to earn interest, to meet accruing interest. The general principles laid down in the cases of *Gwynn vs. Dorsey, Adm'r*, 4 *G. & J.*, 453, and *Thomas' Adm'x, vs. The Fred. Co. School*, 9 *G. & J.*, 115, and *Chase vs. Lockerman*, 11 *G. & J.*, 207, are recognized in 10 *Md. Rep.*, and cited with approbation, adopting this conclusion: "But if the Court observes that an executor keeps money dead in his hands without any apparent reason or necessity, then it becomes negligence and a breach of trust, and the Court will charge the executor with interest."

Considering the case as presented by the record, we think there was no error in the decree appealed from, and the same must be affirmed.

The matter referred to in the appellant's memorandum, as having occured since the decree appealed from, is not properly before us, and cannot be received.

*Judgment affirmed.*

(Decided June 1st, 1864.)