JAMES E. SHOOK AND ELLA NOVAK, PLAINTIFFS AND RESPONDENTS, v. GEORGE WOODARD AND MABLE WOODARD EYMAN, DEFENDANTS AND APPELLANTS.

No. 9467.
Submitted June 27, 1955. Decided December 1, 1955.
290 Pac. (2d) 750.

520

Ralph J. Anderson, Helena, Messrs. Wilson and Wilson and Joseph T. Wilson, White Sulphur Springs, for appellants.

George Niewoehner, White Sulphur Springs, for respondent.

Mr. Anderson and Mr. Niewoehner argued orally.

MR. JUSTICE ANGSTMAN:

Argo Woodard, a resident of Meagher County, died intestate July 9, 1939; his wife, Emma Woodard, died October 5, 1946, also without leaving a will. Each owned in their own name separate pieces of real estate. No proceedings for the probate of the estate of Argo took place prior to the death of his wife Emma. After the death of Emma Woodard, James Shook, a grandson, was appointed administrator and later on October 8, 1947, the letters issued to him were revoked and George Woodard, a son, was appointed administrator of both estates. The plaintiffs are respectively the son and daughter of a deceased daughter of Argo and Emma Woodard, and defendant Mable Woodard Eyman is a daughter of Argo and Emma Woodard.

The inventory and appraisal filed in the estate of Argo Woodard disclosed that he had a quarter section of land valued at $960 and personal property valued at $5,433. It contained a notation to the effect that title to the personal property was disputed, the administrator claiming to be the owner of all of it. Plaintiffs brought this action to litigate that claim, and the amended complaint and answer presented the issue as to the ownership of the disputed personal property; the complaint likewise sought a general accounting in equity of the property of the estates alleged to be concealed and converted to their own use by the defendants.

An answer constituting a general denial with two affirmative defenses was first filed and afterwards motion was made to file an amended answer by inserting a third affirmative defense

and counterclaim, which defense and counterclaim was in substance as follows: That Argo and Emma Woodard, about the year 1923, informed defendant George Woodard that by reason of their advancing age and physical illness they found it difficult to care for and operate the ranch and that in consequence they asked defendant George Woodard to assume the management and control of the real property and to make suitable provision for their support out of the income and profits derived therefrom; that defendant George Woodard at that time owned a quarter section of land of his own and was the owner of certain cattle, horses and sheep, and in consequence of the request made by Argo and Emma Woodard, his parents, he sold his ranch and assumed control of the ranch belonging to Argo and Emma Woodard.

It is then alleged that the defendant George Woodard assumed control of the ranch under the promise of Argo and Emma Woodard that all their right, title and interest in and to the real property owned by them should be his after their death; that in reliance on this promise he assumed the management and control of the Argo and Emma Woodard property, and operated it and made provision for their care and maintenance during their life, and made certain improvements upon the property.

It is alleged that defendant, as administrator, sold the real estate belonging to the decedents for prices aggregating more than $10,000, which is now in his possession except he has disbursed certain sums therefrom for premiums upon his official bonds and expenses of administration.

It is alleged likewise in the third affirmative defense and counterclaim that approximately a year prior to the death of Emma Woodard the defendant Mable Eyman was visiting her mother and was told by her that she wanted all her property to go to her son George Woodard with the exception of certain personal effects, and defendant Mable Woodard Eyman thereupon requested her mother to go without delay to Harlowton and see an attorney and have him prepare a will which would give effect to her wish and intention, and that the decedent

Emma Woodard thereupon promised defendant Mabel Woodard Eyman that she would do so.

The prayer of the third affirmative defense is that upon final settlement of the estate all moneys in the hands of the administrator be paid to the defendant George Woodard, less counsel fees and expenses of administration.

Leave to file the amended answer was granted. After hearing the court found that all of the personal property involved, including the livestock and machinery, excepting a 1928 automobile, belonged to the defendant George Woodard. The court further found that the defendant George Woodard has not produced strong, clear or satisfactory evidence sufficient or competent to establish an enforceable contract between him and Argo Woodard whereby defendant George Woodard was to obtain the real estate upon the death of Argo; and that he has not produced sufficient evidence to establish an enforceable contract between him and Emma Woodard to the effect that he was to obtain her land upon her death in consideration for services, maintenance and care as alleged. The court likewise found that defendant George Woodard be required to account to the estate of Argo Woodard for the reasonable value of the use of the lands owned by Argo Woodard from the date of his death until April 26, 1948, that being the date when the real estate was sold by defendant as administrator, and that he account to the estate of Argo Woodard for a 1928 automobile converted to his own use and which he sold for $25.

The court also ordered defendant George Woodard to account to the estate of Emma Woodard for the reasonable value of the use of her lands from the date of her death to April 26, 1948.

Defendants have appealed from the judgment and plaintiffs filed a cross-appeal.

Before discussing the merits of the appeal, questions of procedure are presented, arising from the following facts: On the 13th day of May 1955, and before the case was reached for argument, defendants filed a motion to supplement the transcript

on appeal so as to show that a notice of appeal had been served and filed, the transcript on file not showing that fact. An order was made by this court granting defendants' motion. When the case was reached for argument, counsel for plaintiffs called attention to paragraph 6 of Rule VI of this court requiring notice to be served upon the adverse party before a supplemental transcript could be allowed. Thereupon this court vacated its order allowing defendants to supplement the transcript until notice was given to plaintiffs' counsel. Thereafter, and on May 25, 1955, defendants again filed a motion to supplement the transcript on appeal by showing that notice of appeal had been filed and served. This motion was served on counsel for plaintiffs. Plaintiffs filed a motion to dismiss the appeal and to amend the minutes of this court to show that the case was actually submitted to the court before the notice of appeal was incorporated in the transcript. The several motions were set for argument at the same time that the case was reset for argument on the merits.

There is no merit in plaintiff's motions. This court is committed to the policy of hearing and deciding appeals on their merits. Under our rules no appeal will be dismissed for failure to file the record within time unless the motion to dismiss shall have been filed and notice given to appellant prior to the filing of the record. Rule VI, Par. 2. And the rules are liberal in the provisions available for the correction of errors in the record. Rule VI, Par. 6.

The motion of defendants to supplement the transcript is granted and plaintiffs' motions to dismiss the appeal and to amend the minutes of the court are denied.

As before noted, the court found that the personal property here involved belonged to the defendant George Woodard. Plaintiffs by their cross-appeal question the propriety of this finding. There is ample proof in the record to sustain the finding of the court in this respect. No useful purpose would be subserved in alluding to the evidence bearing upon the point.

We do not find the court erred in finding that the personal property belonged to George Woodard.

Likewise we find that the court's finding with respect to lack ▮ of clear, satisfactory and convincing evidence regarding the title to the real estate must be sustained. At the time of the hearing for the appointment of administrator defendant Woodard gave this testimony which was introduced in evidence here:

"Q. (By the Court) By what means do you claim to be the owner of this land, or do you claim to be the owner? A. Well, I have money in it; when it was bought I had money in the place.

"The Court: And your father owned it too, owned an interest in it? A. I was under age and he had the business and I *left* him this money of mine to buy in on this place.

"The Court: You loaned him the money? A. Yes, sir.

"The Court: That is, but he owned the land? A. It was in his name, yes.

"The Court: If you loaned the money to buy it, it was in his name? A. Yes.

"The Court: And he owned it? A. Yes.

"The Court: How do you claim it? A. From this money I loaned him to buy it and it never been paid back.

"The Court: Well, that of course might be a foundation for a claim, but would it be foundation for ownership? That's your idea that you own it? A. I should have my money back some way.

"The Court: That's another question from the ownership of the land. I think you are getting confused as to the legal consequences of this matter. In other words, if you loan me money to buy land and I buy it, it is true you have a claim to get the money back, but I own the land. A. Yes.

"The Court: Is that what you had in mind when you thought you had a claim to the land? A. It seems like I should have, yes, should have some."

We find, however, that it was error for the court to require

the defendant George Woodard to account to the estate of Argo Woodard for the reasonable value of the use of the lands and real estate owned by Argo Woodard from July 9, 1939, to April 26, 1948.

It is shown by the evidence that the ranch was operated as a family undertaking, the decedents contributing their land and labor, and the defendants contributing livestock, labor and tools as alleged in the affirmative defenses. This arrangement commenced in about the year 1912 or 1913. The record shows that after the death of Argo, the defendant George Woodard contributed labor, livestock and tools for the welfare of himself and his mother, and that this was done pursuant to the arrangement entered into many years before with his father and mother for the maintenance of the home for the benefit of the family. True, defendant George Woodard gave some testimony that he expected to receive the real property in consideration for his services in providing a home for his parents who desired to live on the ranch, but as before stated and found by the Court, the evidence is not convincing that such was the contract. This evidence is, however, sufficient to negative the notion that defendant was obligated to pay any rental for the use of the property. There is nothing in the record to indicate that defendant George Woodard was obligated to pay rental to any one for the use of the real estate, or to make any division of possible profits over and above the cost of supporting the parents. The sum and substance of the evidence supports the conclusion that he was to have the use of the real estate in consideration for his services in providing a home for his parents and for improving the property.

There is nothing in the record to indicate that the account between defendant Woodard and his father was not squared at the time of the latter's death. The same holds true as to the account between defendant Woodard and his mother at the time of her death. The arrangement for the support of the parents was carried out after the death of Argo without any apparent objection on the part of plaintiffs or either of them,

and was continued until the death of Emma Woodard with her consent.

Upon the death of Argo, his property, being valued at less than $1,500, should have passed directly to his widow under R.C.M. 1947, section 91-2406. "That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due." R. C.M. 1947, section 49-121. This is another way of saying that equity regards that as done which ought to have been done. Likewise under R.C.M. 1947, section 91-2401, the widow was entitled to the possession of her husband's homestead and to a reasonable sum for her support. Hence under the statute the possession by defendant George Woodard of Argo's land after his death and until the death of his widow was in legal effect possession by the widow.

Under these circumstances there was no obligation upon the part of George Woodard to pay any rental for the use of Argo's property. After the death of Emma Woodard of course there was an obligation upon the part of the administrator to conserve all the property for the use of all the heirs. He should be required to account in the probate proceedings as the administrator for any use of the property or any rental obtained from the property of both estates by him from and after the death of Emma Woodard until the property was sold in the probate proceedings.

The court properly concluded that all the real estate was owned as follows: An undivided one-third interest by George Woodard, an undivided one-third interest by Mable Woodard Eyman, and an undivided one-sixth interest each by plaintiffs James E. Shook and Ella Novak. The money now in the administrator's hands should be distributed accordingly after the payment of the expenses of administration and allowed claims.

The judgment should be modified in accordance with the views herein stated and as thus modified the same will stand affirmed

with the costs of the trial and of the appeal allowed to defendants.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES DAVIS, BOTTOMLY and ANDERSON, concur.