685 A.2d 1181

Marin SOLIS, Jr., Personal Representative of
the Estate of Catherine Schueneman,

v.

John E. SCHUENEMAN.

No. 441, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Dec. 5, 1996.

Howard L. Stern, Camp Springs, for Appellant.

George E. Meng (Meng & Urey, on the brief), Upper Marlboro, for Appellee.

Argued before HOLLANDER and SONNER, JJ., and ALAN M. WILNER, Judge, Specially Assigned.

ALAN M. WILNER, Judge, Specially Assigned.

The issue before us is one of first impression in Maryland: whether a person occupying the dual role as (1) surviving spouse who has elected to renounce the decedent's will and take his statutory share of the estate, and (2) personal repre-

sentative of the estate, is responsible to the estate for the fair rental value of estate property that he occupies during the period of administration. As is the case with so many issues of law, the answer is: it depends on the circumstances.

## BACKGROUND

The underlying facts are essentially undisputed. In 1964, Catherine and James Schueneman were divorced in Illinois. Mr. Schueneman and their son, John Schueneman, apparently remained in Illinois. Catherine moved to Maryland and, in 1969, purchased a home in Camp Springs. At some point, appellant, Marin Solis, Jr., moved into the home and lived with her as her common law husband until her death in August, 1989. Ms. Schueneman left a will originally signed in September, 1981, but which she had subsequently amended by interlineation.

In the original version of the will, Mr. Solis was appointed as personal representative, and, although it is not entirely clear because of the way in which Ms. Schueneman obliterated some of the typed language, he may also have been the devisee of the Camp Springs home as well as the residuary legatee. Under the revised version, however, Ms. Schueneman left both the Camp Springs property and the residuary estate to her son, John. Mr. Solis received nothing under the revised will.

In September, 1989, Mr. Solis filed a petition to probate Ms. Schueneman's will, claiming standing as the personal representative nominated in the will. In November, the Orphans' Court for Prince George's County ordered judicial probate of the will and appointed Mr. Solis as personal representative. In his list of persons interested in the estate, Mr. Solis included himself both as personal representative and as Ms. Schueneman's common law husband. On May 17, 1990, as the surviving spouse, he filed an election under Md.Code Est. & Trusts art., § 3–203 to renounce the will and take his statuto-

ry one-third share of the estate.[1]

Notwithstanding the devise of the Camp Springs property to John Schueneman, Mr. Solis continued to occupy the property. Unfortunately, at least in part due to a number of disagreements between Mr. Schueneman and Mr. Solis, the estate has remained open for nearly seven years. Mr. Schueneman filed a substantial claim against the estate, and he excepted to the four administration accounts filed by Mr. Solis. In February, 1991, Mr. Solis wrote to Mr. Schueneman, offering to have a deed for the property prepared, but nothing came of that offer.

In his exceptions to the fourth administration account, filed in August, 1993, Mr. Schueneman raised, for the first time, his complaint that Mr. Solis had lived in the property rent free since his wife's death and that he should be charged with the fair rental value of the property during that period. Mr. Schueneman noted in his exceptions that he had previously raised the issue with Mr. Solis and that Solis had taken the position that he was not obliged to pay rent. Indeed, that is reflected in a letter Mr. Solis wrote to Mr. Schueneman on October 9, 1992, in which, among other things, he asserted that, "[a]s personal representative, I intend to retain the residence in the estate until the matter is concluded. The law does not require, nor do I intend to pay rent." In that letter,

---

1. Although it does not appear from the record that Mr. Solis's status as surviving spouse was initially contested, he offered evidence to the court that he and Ms. Schueneman had held themselves out to be husband and wife from and after September, 1971, in Pennsylvania, Ohio, and New York, as well as in Maryland. On September 14, 1990, based on Solis's unopposed motion, the Orphans' Court entered an order finding that they were "common law married." In subsequent exceptions to Mr. Solis's second administration account, Mr. Schueneman contested that ruling and asked the court to reconsider it. The challenge was based, in part, on an affidavit from his father, James Schueneman, that Ms. Schueneman had accepted alimony payments until her death. James, on his own, filed a claim against the estate for the alimony. That claim was denied on the ground that it was not timely filed and that the statute of limitations had run. Eventually, we are informed, the issue was settled when reimbursement was made for all or part of the alimony payments. Mr. Schueneman has not challenged Mr. Solis's status as surviving spouse in this appeal.

Mr. Solis noted that property values had declined and that it would not be prudent to sell the property at that time. He said nothing about renting it to a paying tenant. Mr. Solis eventually vacated the property on December 31, 1993.

The issue of Mr. Solis's obligation for the fair rental value of the home during the 52 months he occupied the property following his wife's death was adjudicated in the context of Schueneman's exceptions to the fourth administration account. The parties agreed to have the court first determine, as a matter of law, whether Mr. Solis was liable at all, and, if so, then to hold an evidentiary hearing to determine the fair rental value. That was done. The Orphans' Court held that Solis was liable for at least part of the fair rental value, which it later determined was $51,000. From that amount, the court deducted one-third to account for the fact that Solis, by virtue of his election, was a one-third owner of the property, and an additional $6,840 for various expenses paid by Mr. Solis during his occupancy. The net sum found due was $27,740.

Mr. Solis filed an appeal to the circuit court which, in a *de novo* proceeding, also concluded that he was liable, but for a slightly smaller amount. In an opinion and order entered on January 23, 1996, the circuit court determined the fair rental value to be $46,400. It allowed Mr. Solis $6,845 in expenses and then reduced the remainder by a third, leaving a net rent due of $26,370. From the judgment ordering Mr. Solis to pay that amount, he has appealed, complaining that (1) the court erred in finding him liable for anything, and (2) it erred as well in determining the amount that was due. We shall affirm.

## DISCUSSION

### Liability

Mr. Solis makes four arguments in support of his contention that he should not be charged with the fair rental value of the property he occupied: (1) a personal representative has no legal obligation to transform non-income producing property into income producing property when doing so might cause

the estate to incur a risk of loss; (2) as personal representative, he had discretion not to expose the property to the risk of loss by renting it to third parties; (3) by virtue of his election as a surviving spouse, he was a "tenant in common" with Mr. Schueneman and, as such, is not liable for rent absent an actual ouster; and (4) as a matter of public policy, surviving spouses who renounce the will and elect to take their statutory share ought to be entitled to remain in their homes at least for a reasonable period during the administration of the estate. We agree in principle with three of his four propositions—(1), (2), and (4)—but, on the facts in this case, nonetheless shall affirm.

As we indicated, this issue has not yet been addressed by the Maryland appellate courts, although it has been resolved in a number of other States and is the subject of. an ALR annotation. Essentially, the rule is as stated in the ALR article: that, in the absence of particular circumstances affecting the situation, a personal representative is accountable for the use and occupation of his decedent's real estate. The issue usually is whether, and to what extent, particular circumstances affecting the situation exist. L.S. Tellier, Annotation, *Accountability Of Personal Representative For His Use Of Decedent's Real Estate,* 31 A.L.R.2d 243, 245 (1953 & Supp.1995).

We start, in Maryland, with the statement in Md.Code Est. & Trusts art., § 7–101(a) that "[a] personal representative is a fiduciary." He is under a general duty to settle and distribute the estate as expeditiously and with as little sacrifice of value as is reasonable under the circumstances and is to use the authority conferred on him by law or by the will in accordance with "the equitable principles generally applicable to fiduciaries, fairly considering the interests of all interested persons and creditors." *See also Goldsborough v. DeWitt,* 171 Md. 225, 189 A. 226 (1937); *Bastian v. Laffin,* 54 Md.App. 703, 460 A.2d 623 (1983). Among the statutory powers granted to a personal representative is the power to lease property, either as lessor or lessee. Md.Code Est. & Trusts art., § 7–401(n).

In urging that Maryland law does not require a personal representative to account for rental income on non-rental property, Mr. Solis looks to the direction in § 9–104 of the Estates and Trusts article that he distribute estate property in kind, if possible, inferring from that direction that non-income producing property should be distributed in that form. He also seeks assistance from the authority in § 7–401(b) to retain estate assets pending distribution or liquidation, "including those in which the representative is personally interested or which are otherwise improper for trust investment." Implicit in that, he claims, is the right to retain non-productive property as such.

These statutes do not control the result. The direction in § 9–104 that specific property be distributed in kind, if possible, does not mean that such property should not be made productive during the period of administration; nor does the authority conferred on a personal representative by § 7–401(b) to retain assets in which the representative may have a personal interest abrogate his fiduciary duty to deal with that property in accordance with "equitable principles generally applicable to fiduciaries." § 7–101, *supra*.

The rule that we shall follow emanates from the general principles governing the duties of a personal representative, which are largely undisputed and are well stated in 31 Am.Jur.2d, *Executors and Administrators*, §§ 525–573 (1989 & Supp.1996). They include the duty to exercise good faith and not to "advance his own personal interest at the expense of the heirs" (§ 527), the prohibition against dealing with estate assets for personal profit or gain (§ 528), and the duty "to make the estate assets productive" (§ 538). *See Monteith's Exc'r v. Balto. Association, etc.*, 21 Md. 426 (1864); *In re Hubbell's Will*, 302 N.Y. 246, 97 N.E.2d 888, 892 (1951); *In re Jones' Estate*, 400 Pa. 545, 162 A.2d 408 (1960); *Marcus v. DeWitt*, 704 F.2d 1227, 1232 (11th Cir.1983). Although it appears that, at common law, a personal representative had no authority to lease estate property unless conferred by the will or by order of court, that authority, as we have observed, is

now conferred by statute in Maryland. When such authority exists, the personal representative generally has a duty to exercise it, at least when he is in possession of the property. 31 Am.Jur.2d, *supra,* § 571. *See also Succession of Danese,* 459 So.2d 725 (La.Ct.App.1984). That is subsumed, we think, in the duty to make estate assets productive.

Overarching these various duties is the more general fiduciary duty to act prudently, for the benefit of the heirs and beneficiaries of the estate. We agree with Mr. Solis, and the cases recognize, that there is no absolute duty to lease the decedent's real estate if that would be counterproductive—if the expense or risk of loss from doing so would likely exceed any benefit derived from the lease. Nor is there any prohibition against the personal representative occupying the property rent-free if, under the circumstances, that is the most prudent thing to do. Fairly summarizing the case law, and consistent with the view expressed in the ALR annotation, *supra,* Am.Jur.2d states, in § 573:

> "An executor or administrator may be required to account to heirs, devisees, or creditors for his use of the decedent's real estate, even if he is also an heir or devisee. But the personal representative may not be liable for rent, or his liability may be limited, where the occupancy was for the benefit of the estate, or where the occupancy is undertaken pursuant to some reasonable understanding with cotenants who are also distributees."

A number of the cases in this area are from New York. The lead case in that State involved the estate of one Charles Limberg. The decedent's son, William, was appointed executor under a will that was later declared invalid on the ground that it was procured by William's fraud and undue influence. One of the assets in the estate was a piece of residential property containing two apartments. Under the will, that property was devised to William. While the caveat proceeding was pending, William continued to reside in one of the two apartments, the other apartment being rented to a tenant. William collected and accounted for rent from the tenant but

paid no rent himself. After his removal as executor, one of the decedent's grandchildren was appointed administratrix. The surrogate surcharged William $1,035 for the rental value of the apartment from the time of the decedent's death until his removal as executor. The new administratrix then sought to recover an additional $405 for the rental value of his apartment thereafter.

William defended both actions on the ground that, as a cotenant—we presume the alleged cotenancy was based on the fact that, once the will was declared invalid, he and the other heirs took the property as coparceners—his possession was presumed to be for the benefit of all of the cotenants, and he was therefore not chargeable with rent. The surrogate court apparently allowed both surcharges, and William appealed.

Two decisions of the intermediate appellate court are reported; both were filed the same day. In one, the court reversed the surcharge of $1,035, holding that "[a] distributee in possession may not be charged in this proceeding for use and occupancy of the common property." *In re Limberg's Will,* 256 A.D. 1104, 11 N.Y.S.2d 897 (1939) (*Limberg I* ). In the other, the same panel affirmed the judgment for $405, rejecting the cotenancy defense on the ground that it applied only as between cotenants themselves and not as between a tenant and a personal representative. The court noted that the administratrix who was seeking to recover the rent occupied a dual role as both a cotenant/distributee and personal representative but found no difficulty in distinguishing between those roles. Her demand for rent from William was made in her capacity as administratrix, not as a cotenant. *Limberg v. Limberg,* 256 A.D. 721, 11 N.Y.S.2d 690 (1939) (*Limberg II* ).

The New York Court of Appeals entertained an appeal from *Limberg I,* dealing with the $1,035, and reversed. It did not apply, or even mention, the reasoning used by the intermediate court in *Limberg II* but instead dealt with the cotenancy

defense in substance.[2]  The court acknowledged the rule as posited by William, along with the exception to it that a cotenant in possession may be liable for rent when his possession amounts to an ouster or constitutes a denial of the rights of other cotenants.  It held that, because William's possession was pursuant to a will that he procured by fraud and undue influence, it was indeed hostile to the other tenants and, for that reason, he could be surcharged for the rental value.

The *Limberg I* case is, of course, distinguishable on its facts. *Limberg II* is closer on point and has set the tone for later cases in which the New York surrogate courts have found liability for rent on the part of a personal representative/distributee even in the absence of fraud, undue influence, or other such opprobrious conduct.  In *In re Draser's Estate,* 81 N.Y.S.2d 648 (Surr.Ct. Queens Co., 1948), for example—a case similar on its facts to this one—the administratrix was the decedent's widow, who continued to occupy one of the several apartments in the building owned by her late husband.  She too defended against an attempt to surcharge her for the rental value of the apartment on the ground that she was a cotenant in possession.  Noting both *Limberg* decisions, the court held that, while there was no fraud or undue influence, her assumption, as administratrix, of the power to manage the property and collect rent from the other lease tenants in possession sufficed as an ouster of the other cotenants of the fee and thus rendered her liable for rent on her own apartment.  *Id.* at 650–51.

---

2.  There would have been no basis for making the *Limberg II* argument in the appeal from *Limberg I.*  The surcharge for the period that William occupied the apartment as executor was not sought by any cotenant but rather was apparently assessed by the surrogate court. The actual fact of a cotenancy arose only when the will was declared invalid, causing the property to devolve to the heirs at law, which included both William and, among others, the new administratrix.  The need to distinguish between the dual roles of the administratrix became apparent only when she attempted to surcharge William for the subsequent period of occupancy.  Accordingly, we do not regard the omission by the Court of Appeals to mention that argument as being, in any way, a rejection of it.  The issue was simply not before the high court.

In effect, the *Draser* court amalgamated the reasoning used by the two appellate courts in *Limberg.* It recognized that, in *Limberg II,* the administratrix, though also a distributee, was not herself in possession of the property, but it found that distinction irrelevant. At 651, the court held:

"The fortuitous circumstance in this case that the distributee in possession is the administratrix should not produce a different result. Although she occupies a dual position, as administratrix she owes a fiduciary duty to the other distributees to collect rent from all the occupants of the premises alike. Any other result would be inequitable."

See also *In re Gugliuzza's Estate,* 131 N.Y.S.2d 213 (Surr. Ct. Erie Co.1954); *In re Gandy's Estate,* 14 Misc.2d 472, 166 N.Y.S.2d 529 (Surr. Ct. Nassau Co.1957).

This principle has been applied outside of New York. *See In re Estate of Boston,* 80 Wash.2d 70, 491 P.2d 1033 (1971); *Matter of Estate of Engels,* 10 Kan.App.2d 103, 692 P.2d 400 (1984); *In re Estate of Pitt,* 1 Ariz.App. 533, 405 P.2d 471 (1965).

As noted in the ALR annotation, the rule allowing a personal representative/distributee in possession of rentable property to be surcharged for the rental value of that property is not absolute. The cases have recognized circumstances in which such surcharges have been found to be inappropriate. The most common circumstance is where the property is essentially unrentable and the personal representative/distributee occupies it in order to preserve it from decay and vandalism. In that setting, the occupancy is regarded as being for the benefit of the estate, not to its detriment. *See Turner v. Morson,* 316 Mass. 678, 57 N.E.2d 18 (1944); *In re Wanninger's Estate,* 34 N.Y.S.2d 326 (Surr. Ct. Westchester Co.1942); *In re Buck's Estate,* 203 Misc. 1046, 120 N.Y.S.2d 429 (Surr. Ct. Monroe Co.1953); *cf. In re Estate of Pitt, supra,* 1 Ariz.App. 533, 405 P.2d 471. In States where a surviving spouse has a statutory homestead right to occupy a residence, no rent is due during the period of that occupancy. *Shook v. Woodard,* 129 Mont. 519, 290 P.2d 750 (1955); *Stratton v. Wilson,* 170 Ky. 61, 185

S.W. 522 (1916), *overruled on other grounds, Gentry v. Gentry,* 798 S.W.2d 928, 934 (Ky.1990). In *In re Spiss' Estate,* 50 Misc.2d 595, 271 N.Y.S.2d 11, 14–15 (Surr. Ct. Erie Co.1966), the court relieved an administratrix/distributee in possession of an apartment from a surcharge for rent on evidence that other distributees also lived rent-free in the building and no demand was made of the administratrix for rent during the period of her occupancy.

█ The general rule is a fair and reasonable one even in the face of the cotenancy defense. In Maryland, there is the additional and compelling circumstance that a surviving spouse who elects a statutory share does not become a cotenant with the devisee of the property during the period of administration, so no cotenancy defense exists. Prior to the 1969 substantive revision of the testamentary law, a cotenancy could exist in real property during administration. Under the earlier law, real property passed directly upon death to the heirs or devisees; it was not part of the probate estate and the personal representative therefore never acquired title to it or the right to possess it. *Goldman v. Walker,* 260 Md. 222, 226, 271 A.2d 639 (1970). If a surviving spouse elected to take his or her statutory share in both realty and personalty, the law provided that the spouse "shall take one-third [or one-half if there were no descendants] of the lands *as an heir* and one-third of the surplus personal estate...." Former Md.Code art. 93, § 329 (emphasis added).

Under that statute, coupling the immediate devolution of the real property and the electing spouse's status as an heir, it would seem that a spouse who elected his or her statutory share in the real property would indeed have become, at once, a cotenant with the devisee of that property.

That is not the case under the present law, however. For one thing, real property does not pass directly to the heirs or devisees but forms part of the probate estate and passes to the personal representative. The personal representative holds legal title to the property, though only in his limited capacity as personal representative and only for the purpose

of administration and distribution. *See* Md.Code Est. & Trusts art., § 1–301. If the property is to be distributed in kind, the distribution is effected by a deed from the personal representative, *id.* at § 9–105, and it is only upon the delivery of that deed that the person or persons ultimately entitled to the property acquire title to it. Additionally, the law no longer provides that an electing spouse takes the real property as an heir. The elective share under current law is "a one-third share of the net estate if there is also a surviving issue, or a one-half share of the net estate if there is no surviving issue." *Id.* at § 3–203(a).

Under this approach, appellant held legal title to the Camp Springs property as personal representative but occupied it as an individual with no valid claim to title or possession——not as a cotenant and not as personal representative for purposes of administration. Had the personal representative been someone else, that personal representative could have demanded that he vacate the property or lease it on terms acceptable to the personal representative. Appellant had no right, therefore, as a cotenant or in any other capacity, to remain in the property during the period of administration.

There being no cotenancy defense under existing Maryland law, we are now faced with the question of whether any other exigent circumstances exist that are sufficient to excuse appellant from paying the fair rental value of the property. He *claims* that there was a risk that tenants might damage the property and that he would have had to store personal property located in the house if he rented it to others. He offered no evidence, however, to document or quantify such risk or expense. He *claims* that his continued occupancy outweighed any benefit to other beneficiaries from renting the property, but he offered no evidence to support that proposition. He *claims* that he could not have rented the property for short or uncertain periods, but there was no evidence that he ever made an attempt to find a tenant. The simple fact is that, for over four years, he lived rent-free in a valuable piece of

property, asserting a right to do so.[3] He had no such right and, on this record, we discern no exigent circumstance that would excuse his payment of the rental value of the property.

### Amount

Based on testimony from realtors knowledgeable about property in the area and their assessment of the marketability of the home as rental property, the court found that the property had the following rental values for the years in question:

| | | | |
|---|---|---|---|
| 1989: | $800/month × 4 months | = | $ 3,200 |
| 1990: | $850/month × 12 months | = | 10,200 |
| 1991: | $900/month × 12 months | = | 10,800 |
| 1992: | $925/month × 12 months | = | 11,100 |
| 1993: | $925/month × 12 months | = | 11,100 |
| | | | $46,400 |

From this amount, the court credited appellant with $6,845 in expenses on the property, leaving a net rental value of $39,555. It then reduced that amount by one-third to account for his equitable share in the property, leaving a net due of $26,370.

Appellant makes two complaints about the court's calculations. He first complains about the charge for the four months in 1989, contending that he should have had some grace period in which to move. Had he, in fact, vacated the property at or before the end of 1989, he may have had some equitable basis to seek relief. Although technically and legally, he was obliged either to vacate or begin paying reasonable rent immediately upon Ms. Schueneman's death, a prudent personal representative would have had discretion to allow a reasonable grace period for him to collect his belongings and find other quarters. The fact is, however, that he did not commence a search for other quarters in 1989 and did not, in fact, vacate the property until the end of 1993. He is hardly

---

3. The property consisted of a split level brick dwelling in good condition situate on approximately one-quarter acre of land. It was appraised and inventoried at $137,000.

in a position, therefore, to claim that he had an equitable right to remain in the property rent-free during 1989.

Appellant's second complaint is that the court made a $4.65 arithmetic mistake *in his favor.* We shall not dignify that complaint with a response.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.